ORDERED that the federal skywalk cases are consolidated for discovery and trial. It is further

**In re FEDERAL SKYWALK CASES.**

**No. 81–0945–A–CV–W–5.**

United States District Court,
W.D. Missouri, W.D.

Oct. 29, 1982.

See also, D.C., 95 F.R.D. 479.

Irving Younger, Williams & Connolly, Washington, D.C., Robert Gordon, Anderson, Granger, Nagels, Lastelic & Gordon, Kansas City, Mo., Robert L. Collins, Collins & Steinburg, Houston, Tex., for plaintiffs representing class.

Robert Driscoll, Stinson, Mag & Fizzell, Joseph Sherman, Jackson & Sherman, Michael E. Waldeck, Niewald, Risjord & Waldeck, Kansas City, Mo., for defendants' liaison committee.

Patrick McLarney, Shook, Hardy & Bacon, Max Foust, Morris & Foust, Kansas City, Mo., John Shamberg, Schneider, Shamberg & May, Shawnee Mission, Kan., for plaintiffs-intervenors.

## ORDER

SCOTT O. WRIGHT, District Judge.

Mrs. Deborah T. Jackson, a resident of the State of Utah, brings an action in this Court for physical and emotional injuries which she suffered as a result of the collapse of skywalks at the Hyatt Regency Hotel in Kansas City, Missouri on July 17, 1981.[1] She has moved for the certification of a Rule 23(b)(3) class action on the issues of compensatory damage liability for the collapse of the skywalks, punitive damage liability[2] for the collapse of the skywalks, and amount of punitive damages, if any, for the collapse of the skywalks, and has asked to represent all business invitees, or the representatives of business invitees, who were injured as a result of the collapse of the skywalks. Hearings were conducted on September 13, 1982 and October 29, 1982 to determine the propriety of a Rule 23(b)(3) class action and the adequacy of Mrs. Jackson to serve as a Rule 23(b)(3) class representative. For the reasons which follow, the Court grants Mrs. Jackson's motion and certifies a Rule 23(b)(3) class action.

## I. FINDINGS OF FACT

1. The collapse of two skywalks in the lobby of the Hyatt Regency Hotel on July 17, 1981, killed 114 persons and injured more than 215 persons. The *Report of National Bureau of Standards* estimated that approximately 1,500 to 2,000 persons were present in the hotel lobby at the time of the collapse.

2. The amount of damages claimed by those victims who have filed suit exceeds 1.5 billion dollars. Though the actual value of those claims is probably less than the amount pled, the actual value clearly exceeds the ability of any one defendant or of most combinations of defendants to pay. The net worth of several defendants is either minimal or negative. Approximately 150 million dollars has been committed by insurance carriers of the defendants to settle compensatory and wrongful death damage claims. The insurance carriers contend that their policies with the defendants do not provide coverage for punishable acts or acts rising to the level of aggravating circumstances in a wrongful death case.

3. Mrs. Deborah T. Jackson is a resident of the State of Utah. She was present in the hotel lobby when the skywalks collapsed. She was cut on her legs by flying glass. Her wounds were treated by a nurse or a paramedic at the scene of the collapse. Though she has recovered from the bodily injury which she sustained, she is undergoing psychiatric counseling for the psychological trauma she sustained as a result of the collapse.

4. Mrs. Jackson is able to bear the financial burden of the class action in the same manner as other victims of the skywalk collapse have been able to bear the burden of retaining attorneys to jointly conduct discovery and to try their respective lawsuits. Her interests in seeking a class action are to see that all victims are equitably treated and adequately represented, that she is compensated for her injuries, and that a similar tragic occurrence is avoided in the future.

5. Mrs. Jackson holds a college degree from Brigham Young University and runs her own business. At the time of the collapse, she was a Division Manager of the Fuller Brush Company. She is married and has one child. She is able to be present at the trial of a class action.

6. Her personal attorney is Ms. Jane Marquardt. Her local counsel include Robert Gordon, the firm of Williams & Connolly, Arthur Stoup, William Whitaker and Richard Colbert. Her local counsel have conducted the discovery and other pretrial matters in this Court.

---

1. The previous history of this litigation is reported. *See, In re Federal Skywalk Cases,* 93 F.R.D. 415 (W.D.Mo.1982), *vacated,* 680 F.2d 1175 (8th Cir.1982), *cert. pending,* No. 82–217 (August 6, 1982). *See also, In re Federal Skywalk Cases,* 95 F.R.D. 479 (W.D.Mo., 1982).

2. The term punitive damages, for the purposes of this Order, includes damages for aggravating circumstances in wrongful death actions. *See* Section 537.090, RSMo (1978).

## II. CONCLUSIONS OF LAW

The class action device is the superior tool for the accomplishment of a principled, efficient and expeditious adjudication of the many skywalk claims which threaten to expose defendants to repeated trials, to leave many claimants without a practical chance for redress of punishable or aggravating acts, and to congest the courts of this city for many years. As a resident of Utah, Mrs. Jackson satisfies the jurisdictional requirements relative to the named representative of a class action. *See, Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). Her citizenship is diverse from the citizenships of all defendants and the value of her claims exceeds the $10,000.00 amount in controversy requirement of 28 U.S.C. § 1332.

### A. *Rule 23(a) Prerequisites.*

The class, on whose behalf Mrs. Jackson has brought suit, is defined as: all business invitees, or the representatives of business invitees, who were injured as a result of the collapse of two skywalks at the Hyatt Regency Hotel of Kansas City, Missouri on July 17, 1981. Rule 23(b)(3) provides that Mrs. Jackson may sue as a representative of that class of persons if (1) the class is so numerous that joinder of all members of the class is impracticable, (2) there are questions of law or fact common to the members of the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative party will fairly and adequately protect the interest of the class. Mrs. Jackson satisfies each of these prerequisites.

1. *Numerosity.* Mrs. Jackson has satisfied her burden of showing that the class is so numerous that joinder of all members of the class is impracticable. The membership of the class is composed of from 340 to approximately 2,000 persons. Though many victims have settled their claims, and will continue to settle, many other victims have expressed their intent to go to trial. The intent of numerous other victims is still unknown. Joinder of all members of the class is impracticable. The separate prosecution of the individual claims of each class member who does not settle would place a severe burden on the courts of this city. This Court, therefore, concludes that it is not practicable to join all members of the class. *See, e.g., Paxton v. Union National Bank,* 688 F.2d 552, 559–561 (8th Cir., 1982).

2. *Commonality.* The claims of every class member arise from the collapse of the skywalks. With the single exception of the amount of individual compensatory damages, the operative facts concerning each claim are identical. With respect to compensatory damage liability, the class must prove which defendant, if any, is liable for the collapse. Once determined, class members with physical and/or emotional injuries may prove in a separate proceeding that their injuries were sustained as a result of the collapse and that their injuries are worth a particular amount of money. There is no antagonism between the interests of class members with regard to proving which defendants are liable for compensatory damages. Each class member would bear the same burden in their individual actions.

The same is true with respect to proving liability for punishable acts or for aggravating circumstances. Though several parties have asserted that each victim has a distinct interest in the manner in which a punitive damage award, if any, is divided, the manner in which the award is divided will be controlled by the Court. Any award will be distributed by the Court in relation to the amount each victim receives for his or her compensatory damage claim. *See, e.g., State ex rel. Young v. Crookham,* 290 Or. 61, 618 P.2d 1268, 1269 n. 2 (1980). The commonality requirement is, therefore, satisfied. *Paxton, supra,* at 561.

3. *Typicality.* The claims of Mrs. Jackson, like the claims of all of the other class members, stem from a single event and are based on the same legal theories. *Paxton, supra,* at 561. All of the parties who oppose Mrs. Jackson's motion for the certification of a class contend that her claims are "hardly typical" because she "merely" suffered

cuts from flying glass and psychological trauma, and because she did not suffer the loss of a relative. The Court is not impressed with the insensitivity of that contention. The egregiousness of a class members'· injuries is irrelevant. The Court is satisfied that Mrs. Jackson was injured by the collapse of the two skywalks. Even though it is true that Mrs. Jackson did not lose a relative in the disaster, that fact does not alter the manner in which she will proceed to prove liability against the defendants. Her claims are, therefore, typical of the claims of all members of the class.

4. *Adequacy.* Mrs. Jackson has interests in common with all the members of the class and will vigorously prosecute the interests of the class through qualified counsel. *Paxton, supra* at 562. Those members of the class who do not wish to see their claims prosecuted in any court may settle those claims. Only Mrs. Jackson cannot settle her claim until the issues certified in the class action are finally resolved. In addition, Mrs. Jackson will be able to be in attendance during the course of the trial. This might not be possible for some other potential class representatives. Finally, Mrs. Jackson has accepted the fiduciary responsibilities of a class representative. She is able to bear the expense of this litigation in the same fashion as all other class members who have retained attorneys.

The counsel representing Mrs. Jackson have experience in complex litigation and are able to conduct the discovery and trial of this cause. No conflict of interest has occurred because her local counsel represent Shirley Stover in the United States Supreme Court. *See Stover v. Johnson,* No. 82–217 (August 6, 1982). Regardless of whether the Supreme Court grants Mrs. Stover's petition for a writ of certiorari, the trial of this action may proceed because the same issues are to be tried and any punitive damage award would be recoverable on a class-wide basis. The ruling of the Supreme Court could only affect the number of class members who would share in any award. For example, if Mrs. Stover is unsuccessful, only those members who choose not to opt out of the Rule 23(b)(3) class will share in the award. All who do not settle will share if Mrs. Stover is successful. Any monies recovered as punitive damages can be held by the Court until all victims have been able, within the statutory limitations period, to establish the value of their compensatory damage claims.

B. *Rule 23(b)(3) Prerequisites.*

A class action under the provisions of Rule 23(b)(3) may be maintained where the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members, and where a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court is directed by those provisions to ascertain the interest of the members of the class in individually controlling the prosecution of their actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, the desirability of concentrating the litigation in a particular forum, and the difficulties likely to be encountered in the management of the class action. Mrs. Jackson has demonstrated to the Court that common questions predominate and that a class action is the superior vehicle for the prosecution of the claims arising from the collapse of the two skywalks.

1. *Predominance of Common Questions.* The issues to be tried include compensatory damage liability for the collapse of the skywalks, punitive damage liability for the collapse of the skywalks, and amount of punitive damages. The issues surrounding the amount of compensatory damages will be tried in separate proceedings. All questions of law and fact that have been certified not only predominate over questions affecting individual members of the class, but are identical. With respect to wrongful death claims, where punitive damages are not recoverable, separate instructions, if necessary, can be drafted in accordance with the Missouri law on aggravating circumstances.

2. *Superiority of a Class Action.* The status of Missouri law on the question of

multiple punitive damage awards makes the class action vehicle far superior to any other procedural device. With respect to multiple punitive damage awards, every defendant to this action contends that only one award is permitted by Missouri law and under the due process clause of the Fourteenth Amendment to the United States Constitution. The class members who oppose certification of this class contend that Missouri law clearly permits multiple punitive damage awards. While Missouri law may permit more than one punitive damage award against a defendant based on a single punishable act arising out of a common incident or circumstance, the critical question with respect to the propriety of a class action is whether Missouri law permits *undiminished* multiple punitive damage awards.

Missouri law, at the very least, does not permit undiminished multiple punitive damage awards. *Cf. Rinker v. Ford Motor Co.,* 567 S.W.2d 655, 669 (Mo.App.1978) (means available to control excessive award of punitive damages). In citing to *Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d 719, 724–725 (Mo.1965), the *Rinker* court suggested that remittitur might be an appropriate device for the control of multiple punitive damage awards. *Id.* Since no such relief was sought by the Ford Motor Company in the *Rinker* case, the appellate court did not squarely resolve the issue. *Id.* The Missouri Court of Appeals recently dismissed as moot a case in which the question of undiminished multiple punitive damages might have been resolved. *Monsanto Co. v. Parker,* 634 S.W.2d 506 (Mo.App.1982).

Because Missouri law does not permit *undiminished* multiple punitive damage awards, it is unlikely, as some have contended, that many class members will choose to opt out of the class action. The risks of opting out are very great. Those who opt out of the class and proceed to separate individual trials face the strong possibility that any punitive damage award which they might receive will be diminished by the amount of a prior award or disallowed in its entirety. This risk also weighs heavily on counsel who must advise their clients. If a class member is advised by his or her counsel to opt out, does opt out and then receives a punitive damage award which is greatly diminished or disallowed—when that class member could have equitably shared in an award recovered by the representative of the class—the consequences of that advice may be severe.

Similarly, the class action device helps to insulate those attorneys who represent more than one victim from a violation of Disciplinary Rule 5–105 of the Missouri Code of Professional Responsibility. Disciplinary Rule 5–105 provides, in part, that an attorney must decline or discontinue the representation of multiple clients if the exercise of his independent professional judgment on behalf of the first client who has retained him could be adversely affected by the representation of another client. In separate litigation of these skywalk cases, an attorney representing more than one victim places himself in a conflicting position because only one of his clients can be assured that his or her punitive damage award will not be undermined by an award recovered by another client. The class action device shields the attorney from an ethical violation.

Many victims of the skywalk disaster have filed affidavits which state that they intend to opt out if a Rule 23(b)(3) class action is certified. These affidavits, however, are unenlightening in many respects. In none of these affidavits have victims stated that they have been advised that they risk a diminished or disallowed punitive damage award by opting out. In fact, the affidavits make no mention of the punitive damage problem. These victims do not state that they are relinquishing their claims for punitive damages. Further, the victims who are represented by an attorney who represents other victims do not state that they are aware of their attorney's conflict of interest, that they have been independently advised about that conflict, or that they have consented to the representation by an attorney who represents other victims. *See, e.g., Kelly v. Greason,* 23 N.Y.2d 368, 378, 296 N.Y.S.2d 937, 945–46, 244 N.E.2d 456 (1968) (professional miscon-

duct despite disclosure or consent); *Klemm v. Superior Ct. of Fresno County,* 75 Cal. App.3d 893, 901, 142 Cal.Rptr. 509, 514 (1977) (desirability of independent legal advice to avoid risk of civil liability). *Accord, Anderson v. Eaton,* 211 Cal. 113, 116, 293 P. 788, 789 (1930). If properly advised, it is likely that few victims will choose to opt out. It is the problem which is posed by diminishable punitive damage awards which supplants the interests of individual class members to individually try their separate lawsuits.

The need to treat each victim equitably and to protect each defendant from a multiplicity of suits compels the concentration of this litigation in a particular forum. The availability of the class action device under the Federal Rules makes this Court a suitable forum for the concentration of this litigation. This Court is prepared to manage any difficulty which might arise in the prosecution of this class action.

### III.

Accordingly, it is hereby

ORDERED that Mrs. Jackson's motion for the certification of a Rule 23(b)(3) Class action is granted. It is further

ORDERED that Robert Gordon and the firm of Williams & Connolly serve as Lead Class Counsel, and that Arthur Stoup, William Whitaker and Richard Colbert serve as Assistant Class Counsel. It is further

ORDERED that the parties meet and jointly prepare by November 10, 1982 for the notification of Class members so that this Court can know by January 7, 1982 which Class members have declined membership in the Class. A copy of this order should accompany this notice. It is further

ORDERED that all deadlines previously ordered with respect to a trial of the skywalk cases in this Court remain in effect.