In re FEDERAL SKYWALK CASES.

(Hyatt Regency Hotel Disaster, July 17, 1981).

No. 81–0945–A–CV–W–5.

United States District Court, W.D. Missouri, W.D.

Jan. 31, 1983.

John Campbell, Campbell & Bysfield, Kansas City, Mo., for Seiden & Page, Inc.

Joseph Moore, Moore & Willy, Kansas City, Mo., for H.R. Inspection Services, Inc.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

Irving Younger, Williams & Connolly, Washington, D.C., Robert Gordon, Gordon & Whitaker, Kansas City, Mo., for plaintiffs representing class.

Patrick McLarney, Shook, Hardy & Bacon, Max Foust, Morris & Foust, Kansas City, Mo., John Shamberg, Schneider, Shamberg & May, Shawnee Mission, Kan., for plaintiffs-intervenors.

Robert L. Driscoll, Lawrence M. Berkowitz, Charles W. German, John C. Aisenbrey, Matthew J. Verschelden, Kansas City, Mo., and Hughes, Hubbard & Reed, Robert J. Sisk, John M. Townsend, Norman C. Kleinberg, New York City, Ronald A. Stern, Washington, D.C., for Crown Center Redevelopment Corp. and Hallmark Cards, Inc.

Niewald, Risjord & Waldeck, Michael E. Waldeck, Kansas City, Mo., for Hyatt Corp. and Hyatt Hotels Corp.

Shughart, Thomson & Kilroy, Thomas J. Leittem, Thomas F. Fisher, Kansas City, Mo., for Patty Berkebile Nelson Duncan Monroe Lefebvre Architects Planners, Inc.

Blackwell, Sanders, Matheny, Weary & Lombardi, Larry L. McMullen, Kansas City, Mo., for Concordia Project Management, Inc.

McAnany, Van Cleave & Phillips, Bill E. Fabian, James R. Goheen, Kansas City, Kan., for Eldridge & Son Const. Co., Inc.

Brown, James, Rabbitt, Whaley, McMullin & Pitzer, Donald L. James, St. Louis, Mo., for Gillum-Collaco, Gillum-Collaco Consulting Structural Engineers, Inc. and Jack D. Gillum Associates.

Jackson & Sherman, Joseph A. Sherman, Patrick Lysaught, and Miller & Glynn, Kevin E. Glynn, Kansas City, Mo., for Havens Steel Co.

Dietrich, Davis, Dicus, Rowlands & Schmitt, Heywood H. Davis, Kansas City, Mo., for Marshall & Brown, Inc.

This class action was set for trial on January 10, 1983. On the first day of trial, the Court was informed that counsel for defendants Crown Center Redevelopment Corporation ("Crown Center") and Hallmark Cards, Incorporated ("Hallmark"), and co-lead counsel for the class had reached agreement on a proposed settlement of the class action. The Court released the jury and set a settlement hearing for January 20, 1983. A lengthy hearing was conducted on January 20, 1983, at which all parties were given an opportunity to be heard on the proposed settlement agreement. The Court has fully considered the arguments of the parties, the written suggestions filed by several parties and the terms of the settlement agreement, and, for the reasons which follow, approves the agreement, with both its supplemental compensation and charitable contribution components, and enters final judgment.

## I. FINDINGS OF FACT

1. The collapse of two skywalks in the lobby of the Hyatt Regency Hotel on July 17, 1981, killed 114 persons, physically and emotionally injured over 235 persons, and emotionally injured many other persons. Approximately 2000 to 2500 persons were present in the hotel lobby at the time of the collapse.

2. The claims of the victims of the collapse were certified as a voluntary class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on October 29, 1982. *In re Federal Skywalk Cases,* 95 F.R.D. 483 (W.D.Mo.1982) ("Federal Skywalk Cases").[1] The issues to be determined

---

1. Previously, on January 25, 1982, this Court certified a Rule 23(b)(1), or mandatory, class action on the issues of liability for compensatory damages, liability for punitive damages and amount of punitive damages. *Federal Skywalk Cases,* 93 F.R.D. 415 (W.D.Mo.1982). The

382

by the class action were liability for compensatory damages, the liability for punitive damages, and the amount of punitive damages. *Id.* at 484 n. 2. The members of the class included "all business invitees, or the representatives of business invitees, who were injured as a result of the collapse of the skywalks." *Id.* at 484. Estimates of the number of persons who were members of class ranged from 1500 to 2500. Notice of the class action was sent to the membership on November 19, 1982 after five defendants and several plaintiffs who opposed the class [2] were denied appellate and extraordinary relief from the October 29, 1982 certification order, the November 16, 1982 order approving a form of notice, and an order of August 2, 1982 denying plaintiffs-intervenors' third motion to disqualify the Court. The members of the class were given approximately 40 days to decide whether to remain in or exclude themselves from the class.

3. On December 6, 1982, defendants and plaintiffs-intervenors jointly moved in state court for the conditional certification of a class action, for approval of a form of notice and for the tentative approval of a class-wide settlement. After a brief proceeding, the state court conditionally certified a class action, approved a form of notice and tentatively approved a class-wide settlement. The state court class was defined in essentially the same terms as the federal class; it did not limit its membership to only those class members who opted out of this class. Lead class counsel, who had been appointed by this Court to represent the class, were not notified of the proceeding in state court. Members of the

mandatory class action was certified in order to protect the many victims of the skywalk disaster from a limited fund to pay punitive damages, to protect the many defendants from the onerous expense of litigating a multiplicity of suits, to guarantee an equitable distribution of any punitive damage award without regard to whether a particular victim was first to file and try his lawsuit, to insulate those attorneys who represented more than one punitive damage claimant from an actual conflict of interest under Disciplinary Rule 5–105 of the Missouri Code of Professional Responsibility, and to provide for an efficient and principled procedural vehicle for the speedy resolution of all of the skywalk litigation. *Id. See also, Federal Skywalk Cases,* 95 F.R.D. 479, 480–81 (W.D.Mo. 1982). Though the few victims which moved for the certification moved only for a mandatory class action on the punitive damage issues, the Court, on its own motion, certified a mandatory class action on the punitive damage issues and the issue of compensatory damage liability, and selected a class representative from among the cases filed. The Court did not certify the highly individualized issue of the amount of compensatory damages to which each class member would be entitled. The determination of the amount of compensatory damages was left to settlement or subsequent court proceedings.

The state of Missouri law on the question of how courts are to manage multiple punitive damage claims required the use of the class action device. Missouri law, like the law of many other states, does not permit *undiminished* multiple punitive damage awards. *Federal Skywalk Cases,* 95 F.R.D. 483, 487 (W.D.Mo. 1982). For example, where punishable conduct results in a series of individual trials, those victims of the punishable conduct who do not proceed to trial first face the strong possibility that any punitive damage award which they might receive will be diminished by the amount of a prior award or be disallowed in its entirety. *Id.* A reduction by the amount of a prior award may be fair for the culpable party, but results in unequal treatment for the many victims. Though all of the skywalk litigants faced this possibility and though the multiple punitive damages problem could have been reconciled by the certification of a mandatory class action, only the Court and a few plaintiffs favored its use from the beginning.

On June 7, 1982, a majority of the appellate court vacated this Court's certification of a mandatory class by holding that the class certification order constituted an injunction appealable under 28 U.S.C. § 1292(a)(1) and that a mandatory class action was barred by the Anti-Injunction Statute, 28 U.S.C. § 2283. *Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982). The majority of the appellate court noted the complex issues facing this Court and commended this Court's "creative efforts," but found that the mandatory certification order could not "stand on the facts" before it. *Id.* at 1184 n. 14. By limiting its decision to the facts before it, the appellate court left open the possibility that some future mandatory certification of a mass tort involving multiple punitive damage claims might be better received now that the ground has been broken.

2. These plaintiffs have been characterized throughout the litigation as plaintiffs-intervenors. The Court will continue to use that label in this opinion.

class counsel team who had cases on file in state court were deliberately not notified of the proceeding. At that proceeding, the state court scheduled a hearing on the final certification of the class action and on the final approval of the settlement for January 5, 1983, five days before trial was to commence in this Court. A form of notice was issued immediately, though its issuance was not preceded by a hearing on its content. *Federal Skywalk Cases,* 97 F.R.D. 365 (W.D.Mo.1983).

4. The tentative state court settlement generally provided that each member of the state court class could elect to receive a payment of $1,000 in exchange for a full release of all claims against the defendants, to settle all of their claims against the defendants for more than $1,000 or to try the issue of the amount of their compensatory damages. If the state class member elected to go to trial, the defendants agreed not to contest liability and the class member became entitled to an amount of supplemental compensation from a fund created by certain defendants. The size of the fund from which supplemental compensation would be paid could reach $20 million. The defendants were free to withdraw from the proposed settlement if the state class action failed to attract a sufficient number of class members from the federal class action.

5. Before the hearing on the final approval of state court settlement convened, the defendants began paying $1,000 to class members who would release their claims.[3] Over 1,025 payments had been made by January 20, 1983. On January 4, 1983, the state court judge disqualified himself and another judge was selected to preside over the January 5, 1983 certification and settle-

ment hearing. *Federal Skywalk Cases,* 97 F.R.D. 365 (W.D.Mo.1983).

6. On December 7, 1982, an emergency hearing was convened by this Court on the plaintiffs' motion to have the defendants show cause why they should not be held in contempt of court for unauthorized communication with members of the federal class action. The Court was moved to issue supplemental notice to the class members. The Court found that the public was utterly confused by the hurried events which began in state court on the preceding day and, consequently, decided not to issue supplemental notice. *Federal Skywalk Cases,* No. 81–0945, slip op. (W.D.Mo. Dec. 9, 1982). A hearing was initially set for December 21, 1982, on the issue of the defendants' contempt, but the hearing was continued on the Court's own motion. *Federal Skywalk Cases,* No. 81–0945, slip op. (W.D.Mo. Dec. 20, 1982). On January 3, 1983, a hearing was conducted on the plaintiffs' motion for contempt. The Court found that, regardless of the events in state court on December 6, 1982, it had created an attorney-client relationship between class counsel and the class members by its certification order of October 29, 1982, that Disciplinary Rule 7–104 of the Missouri Code of Professional Responsibility was violated by the defendants when they communicated directly with federal class members without consent of federal class counsel and without supervision by the Court, *Federal Skywalk Cases,* 97 F.R.D. 370 (W.D.Mo.1983), *citing Gulf Oil v. Bernard,* 452 U.S. 89, 104 n. 21, 101 S.Ct. 2193, 2202, 68 L.Ed.2d 693 (1981), and that opt-outs made after December 6, 1982, whether evidenced by opt-out certificates or releases purchased by defendants for $1,000, would not be recognized until

---

**3.** The proposed settlement papers submitted to the state court for tentative approval at the December 6, 1982 proceeding contained language which permitted the immediate payment of $1,000 to all class members who elected to receive that one-time payment in exchange for a full release of their claims. The state court, however, had not reviewed the proposed settlement papers prior to its giving of tentative approval. In fact, the state court stated on December 6, 1982 that it was not expressing

any opinion as to the propriety of the proposed settlement, that it intended to take a more detailed look at the proposed terms, and that it viewed its actions in tentatively approving the proposed settlement as a finding of "probable cause." The state court, nonetheless, permitted the payment of $1,000 to class members despite the absence of its final approval and despite the great confusion among class members which resulted from the hurried payments.

after supplemental notice was issued to those class members who had opted out after December 6, 1982. *Id.*

7. On January 5, 1983, the state court conducted an evidentiary hearing on the final certification of a class and on the final approval of a class action settlement agreement. On the next day, the state court entered final judgment certifying the state litigation as a class action and granting approval to the state class action settlement. *In re Skywalk Cases,* No. CV81–15244 MCF (Circuit Ct. Jackson Co., Mo. Jan. 6, 1983). When the state court judgment was entered, approximately 50 class members had filed exclusion forms with the state court. About one-half of those 50 class members had filed exclusion forms with this Court. Exactly 24 persons had filed exclusion forms in state court but not in federal court. One class member had written this Court requesting inclusion only in the federal class. That member, however, did not file an exclusion form in state court.

8. The class action was set for trial on January 10, 1983. During the three days preceding the first day of trial, counsel for Crown Center and Hallmark and co-lead counsel for the class entered into serious settlement negotiations. The Court was informed on the morning of January 10, 1983, that agreement had been reached on a proposed settlement. The Court released the jury and read the proposed settlement to all those persons present in the Court. It then ordered that the proposal be submitted to the remaining class members for their consideration and that the parties not publicly discuss the proposed settlement until it was finally approved or rejected by the Court. Immediately after the proposed settlement agreement was announced to the public, the Court vacated its January 4, 1983 order holding the defendants in contempt of Court for unauthorized contact with members of the class. A hearing on the proposed settlement agreement was then set for the afternoon of January 20, 1983.

9. The Court redefined the class on January 13, 1983 in terms which provided that only 24 persons were members of the class. It additionally approved a form of notice of the proposed settlement and directed that the notice be given to members of the federal class. The full text of the notice was published in the Kansas City Star newspaper on January 16, 1983. Extensive local and national media coverage was also given to the announcement of the proposed settlement. A copy of the proposed settlement was delivered with the notice to the 24 class members.

10. The proposed settlement agreement generally provides that a class member can elect to receive a payment of $1,000 in exchange for a full release of his claim, to settle his claims, to have the amount of his compensatory damages determined by arbitration, or to have the amount of his compensatory damages determined by a jury. The settling defendants, Crown Center, Hallmark, Hyatt Corporation, Hyatt Hotels Corporation, Eldridge & Son Construction Company, and PBNDML Architects Planners, Incorporated, agreed not to contest liability. Hallmark agreed to pay a minimum of $6.5 million to charity over the next four years. Crown Center agreed to cause the creation of a fund of $3.5 million for the payment of supplemental compensation to those class members who arbitrate or try their damage claims, and for the payment of attorneys' fees and expenses. If the $3.5 million fund is not exhausted, Hallmark agreed to make an additional charitable contribution in the amount not exhausted, so that a fixed sum of $10 million will be paid on behalf of the 24 class members. A fund of over $150 million has been established by all defendants for the payment of compensatory damages. A copy of the agreement is attached as "Appendix A" to this order.

11. A settlement of the federal class action had been proposed when the original Rule 23(b)(1) class action was being reviewed by the appellate court. That proposed settlement provided for an equitable

distribution of $23.5 million to all class members in exchange for the release of their punitive damage claims. The $23.5 million proposed settlement was not contingent, could not be reduced, and did not give the defendants the opportunity to withdraw. The $23.5 million sum was attacked by the plaintiffs-intervenors on the grounds that it was too small. The plaintiffs-intervenors also attacked the acceptance of that sum by the counsel who the Court appointed to represent the class on the ground that the act of acceptance represented a breach of the fiduciary responsibilities owed to class members. When the appellate court vacated the Rule 23(b)(1) class action on June 7, 1982, the proposed $23.5 million settlement was abandoned.

12. A settlement hearing was conducted on January 20, 1983. All but two parties were in full agreement with the proposed settlement agreement. One of those two parties agreed with the proposed settlement, but asked that its approval be delayed for 60 days so that the defendants' good faith in settling his individual cases could be tested. The other dissenting party objected to the payment of any monies to charity. A member of the state court class asked to comment on the proposed agreement and on the conduct of the defendants, but her request was denied in light of her membership in a separate class action. That class member had not taken the opportunity to speak at the state court hearing on the settlement of her claims. Those class members and those representing parties who requested permission to speak were heard.

13. During the January 20, 1983 settlement hearing, various defendants assessed their respective liability or lack of liability for the collapse of the two skywalks. The class then offered its assessment. These assessments were merely statements of counsel rather than evidence.

14. The parties have stipulated that the following 24 persons are the remaining members of the class:

Brenda J. Abernathy
Jack L. Berlau
Jeanne F. Brand
Jozef A. Brand
Senta W. Brody
Joan H. Disney
Marian D. Farris
Joseph R. Fleming
Loralee Frelich
Esther Gilbert
Sandra Ann Goodrich
Deborah T. Jackson
James W. Jackson
Carolyn L. Lucas
Charles E. Lucas
Francis P. Meeks
Dwight Lee Noble
Paul Wayne Noble
John A. Peterson
Charles H. Richardson
Molly Riley
William C. Thomas, Jr.
Joseph E. Vrabel
Susan I. Ward

## II. CONCLUSIONS OF LAW

The litigation arising out of the collapse of two skywalks at the Hyatt Regency Hotel on July 17, 1981, has culminated in a motion, joined fully by all but two parties, to approve a proposed settlement agreement. The settlement of a class action requires the intervention of the Court. Under Rule 23(e) this Court must first determine whether the interests of all class members were properly represented and then determine whether the terms of the proposed settlement agreement are fair, reasonable and adequate. *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). While the Court ultimately determines that the class was properly represented and that the settlement is fair, reasonable and adequate, it does so in light of the following two separate analyses.

### A. *Proper Representation*

■ The initial inquiry in this Court's evaluation of the proposed settlement

agreement is whether the interests of all class members were properly represented by those who negotiated and entered into the proposed settlement on their behalf. *In Re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir.1981). *Developments in the Law—Class Actions*, 89 Harv. L.Rev. 1318, 1537–38 (1976). The negotiation posture in which counsel who were appointed to represent the class found themselves changed throughout the course of this litigation. When the original Rule 23(b)(1) mandatory class was under submission in the appellate court, class counsel tentatively agreed to a settlement of the class-wide punitive damage claim for a fixed sum of $23.5 million. The tentative agreement was reached on behalf of the entire class. Though the settlement agreement was never consummated, it was not opposed by any of the remaining 24 class members. It was opposed by the plaintiffs-intervenors on the ground that it was too small.

A second tentative class-wide settlement agreement was entered into by all defendants and the plaintiffs-intervenors on December 6, 1982. That agreement provided that each member of the state court class could elect to receive a payment of $1,000 in exchange for a full release of all claims against the defendants, to settle all of the claims for more than $1,000, or to try the issue of the amount of their compensatory damages. Where a trial was elected, a class member became entitled to supplemental compensation from a fund created by certain defendants.

The counsel appointed to represent class members in this Court challenged the tentative settlement in state court on the grounds that it was improperly given tentative approval by a judge whose relatives stood to gain under its terms, that the defendants had violated the Missouri Code of Professional Responsibility in negotiating it, that it did not guarantee a fixed sum of $20 million to be distributed to some source, that its proponents had earlier opposed a settlement offer of a fixed sum of $23.5 million, that the defendants could withdraw from the agreement at any time prior to its approval, and that it was tentatively approved after notice was deliberately withheld from two parties who had cases on file in state court. Though the judge who tentatively approved the settlement disqualified himself, his previous actions were not voided and his tentative approval was finalized by another judge shortly after the January 5, 1983 state court hearing.

All of the remaining 24 class members had an opportunity to join in the settlement in state court. Not one of them objected to the actions which federal class counsel took to have the state court proceeding nullified, to have the defendants held in contempt of this Court for unauthorized contact with them and fellow class members, and to have this Court deny full faith and credit recognition to the judgment in state court.

A third tentative settlement agreement was then entered into by those representing the remaining 24 class members and all of the defendants on January 10, 1983. This Court adjourned the trial and set a hearing for January 20, 1983 on the proposed settlement. On January 13, 1983, the Court approved a form of notice and ordered its immediate delivery. A lengthy hearing was conducted on January 20, 1983, at which time all 24 class members were given an opportunity to support or oppose the proposed settlement. No member of the class counsel team opposed the settlement, though one member requested that its approval be delayed for 60 days. Two of the members of the class opposed the contribution to charity, but did not otherwise oppose the proposed settlement. No class member challenged the adequacy of the representation which they had received.

The Court is assured that the representation provided the class throughout the settlement negotiation process was more than adequate. The counsel which it appointed were well informed about the strengths and weaknesses of their case as it had evolved prior to the first day of trial. *Cf.* Haudek, *The Settlement and Approval of Stockholders' Actions—Part II: The Settlement*, 23 Sw.L.J. 765, 771–72 (1969) (integrity of ne-

gotiating process is important). Though incessant personal attacks were levied against those appointed to represent the class by some members of the local bar, the Court found those attacks to be unfounded and self-serving. The appointed counsel have stood firm in their fiduciary responsibility to the class. All interests of the remaining 24 class members were properly represented by the appointed counsel in the negotiation of the proposed settlement agreement.

## B. *Proper Settlement Terms*

██ Having penultimately determined that the class was adequately represented in the settlement negotiations, the Court must finally determine whether the terms of the proposed settlement agreement are fair, reasonable and adequate. *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). The Court considers the following factors in evaluating the terms of the settlement: (1) the exact terms proposed; (2) the additional terms suggested by certain class counsel; (3) the recommendations of counsel; (4) the merits of the plaintiffs' case; (5) the ability of defendants to pay; (6) the stage of the proceedings; (7) the complexity, length and cost of further litigation; and (8) the impact on the Kansas City community.

1. *The exact terms proposed.* The proposed settlement agreement treats all persons injured by the skywalks collapse in essentially the same manner. This Court has not been asked to approve a settlement which provides a member of the federal class action with significantly greater benefits than a member of the state court class.[4] Though the Court could approve a settlement which differs significantly, it deems relative parity of treatment essential to its approval. The Court has reviewed the state court settlement agreement in evaluating the relative parity of treatment.

The state and federal court settlement packages have many parallel terms. In both settlement agreements a class member may elect to receive a payment of $1,000 in return for a full release of all his claims against all of the defendants. The class member who applies for $1,000 will not be required to prove any injury and will not be entitled to any supplemental compensation. Additionally, a class member may elect to negotiate a full settlement of his claims on any terms he may reach, but will not be entitled to any supplemental compensation. Finally, a class member may have the amount of his compensatory damages determined by a jury trial. If the class member goes to trial, he is entitled to receive supplemental compensation.

A member of the federal class has several additional options which are not available to members of the state class. First, he may have the amount of his compensatory damages determined by a three-person arbitration panel. The defendants pay the costs of arbitration. The class member is entitled to reimbursement of his attorney's fees and expenses if the arbitration award exceeds the highest settlement offer made to him by the defendants. The class member who elects arbitration is entitled to

4. This Court has previously criticized the manner in which the participants in state court secretly and hurriedly rushed a class-wide settlement to judgment in state court. *Federal Skywalk Cases,* No. 81–0945, slip op. (W.D.Mo. Jan. 4, 1983). The Skywalk litigation makes clear that in the future litigation of mass torts, courts must assert firm control from the outset and must guard against the abuse of the class action device. The class action device has proved very beneficial in the resolution of this Skywalk litigation; but if every court in every state where a victim resided had certified a class which was composed of the same membership, adverse parties would be free to shop for the best settlement package. *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1125 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). Cooperation among court systems can prevent the abuse. The Skywalk litigation presented the state and federal courts of Missouri with unique and complex issues. Each court handled the litigation in the manner it deemed most appropriate. And even though this Court has been critical of the events which transpired in state court in the weeks preceding the trial of this case, this Court finds, despite those events and for the purposes of approving this settlement agreement, that the state court judgment of January 6, 1983 is entitled to full faith and credit in accordance with 28 U.S.C. § 1783.

supplemental compensation. Second, those class members entitled to supplemental compensation may elect to immediately take an amount equal to one-half of their compensatory damages rather than to await an award of supplemental compensation by the Court. Finally, since the Court makes the award of attorney's fees and expenses in the amount it deems proper, the class members will not have to reimburse class counsel out of any settlement or award.

■ A unique final term of the proposed settlement agreement provides for a substantial payment to charity by Hallmark. Hallmark has agreed to contribute a minimum of $6.5 million to charity during the next four calendar years. In addition, if all payments of supplemental compensation, fees and expenses total less than $3.5 million, the amount remaining will also be contributed to charity. Because a settlement term which provides for a substantial charitable contribution is unique in the litigation of class actions, one class member has challenged it on the ground that the Court cannot take money away from class members and appropriate it to charity. The Court, however, is not approving the taking of any money from any class member. Out of the $10 million settlement fund, the class members are only entitled to supplemental compensation of up to $3.5 million. They will be paid only out of that fund. The settlement agreement does not provide for any additional supplemental compensation. The dissenting class member has not, however, challenged the $3.5 million supplemental compensation fund as inadequate. Though the remaining 24 class members do not have any entitlement to the $6.5 million charitable fund, it is clear that they are entitled to credit for its creation.

■ 2. *Suggested additional terms.* One member of the class counsel team has suggested that the Court supplement the proposed settlement agreement with three additional terms. First, the Court has been asked to convene a public forum at which members of the public could question members of the companies which have been sued by the class. The Court has no authority to convene a public forum. Several members of the state court class have also joined in this request. They, however, voluntarily excluded themselves from membership in the federal class and willingly released their right to trial by entering into the state court settlement. They did not raise similar concerns in state court and must now look to the state court for the relief they request.

Second, the Court has been asked not to approve a charitable payment to the Kansas City Zoo. Since most of the charitable monies have been earmarked for charities which have been chartered for the purpose of lessening human pain and suffering, the Court does not find a contribution which brings exotic wonders of nature to the Kansas City community offensive or inappropriate.

Finally, the Court has been asked to compel the defendants to take certain steps to cause 114 trees to be planted at a public memorial dedicated to those who died in the skywalk disaster. Again, though a public memorial may be fitting, the Court has no authority to order its creation.

3. *Recommendations of counsel.* All but one member of the appointed class counsel team have recommended immediate approval of the settlement. The sole dissenter asks that the settlement not be approved for 60 days so that the defendants' good faith can be tested in settlement negotiations, but does not object to the express terms of the settlement. That dissenter apparently intends to use the 60-day moratorium as a lever to extract more favorable terms for his individual client. It is unlikely that the able defense counsel would succumb to that kind of pressure. More importantly, since the dissenting class counsel has no objection with respect to the substance of the agreement, the Court considers his request for a 60-day moratorium as a highly inappropriate use of his fiduciary relationship with the class. He is using, however innocently, his position as assistant class counsel to further his individual client's case. Thus, the dissenting class

counsel's request for a 60-day moratorium is denied.

■ The counsel appointed to represent the class have taken the lead role on behalf of all plaintiffs in the skywalk litigation. They are intimately familiar with the evidence against all defendants and are also aware that, because of the activities in state court during the few weeks preceding the commencement of trial in this Court, only 24 persons remain in the class. While the Court cannot blindly accept the recommendation of class counsel, the Court is entitled to and does place considerable weight on their recommendations. *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305 (7th Cir. 1980); *Boyd v. Bechtel Corp.,* 485 F.Supp. 610 (N.D.Cal.1979).

■ 4. *Merits of plaintiffs' case.* Though all of the defendants agreed not to contest liability, several presented their versions of the case during the settlement hearing. The plaintiffs rebutted those contentions of the defendants with which they disagreed. Though a settlement hearing is not a rehearsal for trial, the Court should, nonetheless, attempt to arrive at some evaluation of the points on which the settlement is based. *Brucker v. Thyssen-Bornemisza Europe N.V.,* 424 F.Supp. 679 (S.D. N.Y.1976) *aff'd* 559 F.2d 1202 (2d Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977). The Court has evaluated the settlement agreement in light of the assessments proffered by the parties.

5. *Ability of defendants to pay.* Only a few defendants have sufficient assets and insurance to pay large compensatory and punitive damage awards. Several defendants have stated in their answers to interrogatories that their net worth is minimal or negative. *Federal Skywalk Cases,* 95 F.R.D. 479, 480 n. 1 (W.D.Mo.1982). All of the insurance carriers contend that their policies with the defendants do not provide coverage for punishable conduct. *Id.* While several defendants have sufficient

assets, there is no guarantee that these defendants will be found liable at a trial.

The settling defendants have agreed not to contest liability and are willing to settle any claim for at least $1,000. In addition, approximately $150 million has been committed to the payment of compensatory damage claims.

6. *Stage of proceedings.* Essentially all discovery has been completed. More than 80 persons who had knowledge pertaining to the skywalk disaster have been deposed. Class counsel have reviewed the one million pages of documents produced by the defendants and have used the documents extensively in depositions.

Discovery, which was conducted over a period of one and one-half years, has covered all phases of the design, construction and management of the Hyatt Regency Hotel. Through the exhaustive discovery, all parties have gained a comprehensive knowledge of the facts relating to their respective claims and defenses. Each has sufficient evidence on which to base an intelligent assessment of the settlement proposal.

7. *Complexity, length and cost of further litigation.* A trial of this cause would be a complex, lengthy and costly process. It could last from two to six months, and cost the parties hundreds of thousands of dollars in attorneys' fees and expenses. The settlement avoids the lengthy and complex trial. In addition, the amount of fees paid to class counsel is controlled by the Court. The fee award will not impair any class member's right to receive supplemental compensation. Since the insurance policies covering some of the defendants require the payment of their attorneys' fees out of the coverage, an end to the litigation preserves insurance monies for compensation of injured class members.

8. *Impact on the Kansas City Community.* The resolution of this litigation in a settlement sum satisfactory to the remaining 24 class members and their families permits the Kansas City community to end its daily preoccupation with the events of that tragic evening. The community of

Kansas City, as well as the nation, has learned that the imperatives of civic development require scrupulous checking and rechecking of structural designs   Projects inspired by the political and business leadership must be forever subjected to tedious scrutiny.  As this litigation has made clear, anything less may result in a civic nightmare rather than the fulfillment of a civic dream.

Hallmark's substantial contribution to charity is a novel and an extraordinary act of restoration.  Its healing gesture serves not only as a fitting response to the most unfortunate human tragedy to visit this city, but also as a reaffirmation of Hallmark's position among the corporate leadership of Kansas City and the nation.

While much public attention has been trained on the loss of truth in a settlement, it is unlikely that a lengthy trial would have pinpointed the blame for the collapse of the skywalks.  Many defendants may have been found liable by a jury of their peers.  Speculation would have continued.  This absence of certainty, however, means that all parties collectively share responsibility.  For where there is no culpability, there is no innocence.

### III

Accordingly, it is hereby

ORDERED that the interests of all class members were adequately represented by those appointed counsel who negotiated and entered into the Settlement Agreement.  It is further

ORDERED that the Settlement Agreement, attached as "Appendix A" is approved as fair, reasonable and adequate, and is to be carried out in accordance with its terms.  It is further

ORDERED that all motions in opposition to the Settlement Agreement are denied.  It is further

ORDERED that the presently known 24 members of this settling class are:

Brenda J. Abernathy
Jack L. Berlau
Jeanne F. Brand
Jozef A. Brand
Senta W. Brody
Joan H. Disney
Marian D. Farris
Joseph R. Fleming
Loralee Frelich
Esther Gilbert
Sandra Ann Goodrich
Deborah T. Jackson
James W. Jackson
Carolyn L. Lucas
Charles E. Lucas
Francis P. Meeks
Dwight Lee Noble
Paul Wayne Noble
John A. Peterson
Charles H. Richardson
Molly Riley   ·
William C. Thomas, Jr.
Joseph E. Vrabel
Susan I. Ward

It is further

ORDERED that any defendant which becomes a Participating Defendant by agreement with Crown Center must file a stipulation with this Court certifying that defendant's status as a Participating Defendant.  It is further

ORDERED that the parties and their counsel may now publicly discuss the Settlement Agreement in accordance with the Missouri Code of Professional Responsibility.  It is further

ORDERED that all claims which all class members have, have had, or might have against the Settling and Participating Defendants for punitive damages or for damages based on aggravating circumstances in wrongful death cases are dismissed with prejudice.  It is further

ORDERED that this Court retains jurisdiction over this cause (1) until the Settling Defendants certify that all payments contemplated by the Settlement Agreement have been made; (2) to supervise compensatory damage trials; (3) to supervise the determination of the amount of supplemental compensation to be paid to eligible class

members; and (4) to otherwise supervise and direct the administration of the Settlement Agreement. It is further

ORDERED that the Settling Defendants inform this Court by letter every thirty (30) days from the date of this order with respect to progress made under the Settlement Agreement. It is further

ORDERED that all class counsel submit within sixty (60) days of the date of this order a detailed accounting of their attorneys' fees and expenses. It is further

ORDERED that all defendants that are not Participating Defendants bear the costs of this action. It is further

ORDERED that if all defendants become Participating Defendants the costs of this action are to be borne by the Participating Defendants.

## APPENDIX A

### FEDERAL CLASS ACTION SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT made as of the 13th day of January, 1983 by and between Crown Center Redevelopment Corporation and Hallmark Cards, Incorporated (collectively the "Settling Defendants") and the undersigned co-lead federal class counsel, as the legal representatives of the class in an action styled *In re Federal Skywalk Cases.*

WHEREAS, the above-mentioned class action is pending in the United States District Court for the Western District of Missouri and was set for trial commencing January 10, 1983; and

WHEREAS, the parties wish to make full compromise and settlement of all claims which have been, might have been, or might be asserted in any forum as a result of the collapse of two skywalks on July 17, 1981, at the Hyatt Regency Kansas City; and

WHEREAS, the Settling Defendants deny all liability for damages, compensatory and punitive, but the parties believe that their interests, the legitimate interests of other persons injured as a result of the skywalk collapse, and the public interest will be served by implementing the settlement described below; and

WHEREAS, the parties agree that all persons injured by the skywalk collapse should have their claims treated and resolved in essentially the same manner, regardless of whether they are members of the federal class action or the state class action described below;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements set forth below, it is hereby agreed as follows:

1. The parties agree that the class action settlement given final approval on January 6, 1983, by the Circuit Court of Jackson County, Missouri in the action styled *In re Skywalk Cases,* Consolidated No. CV81–15244MCF, is binding, and that the final judgment entered by that Court is entitled to full faith and credit in the action pending in the United States District Court for the Western District of Missouri.

2. The class of persons entitled to participate in the settlement is described in the Court's Order of October 29, 1982, as modified by the Order entered January 13, 1983, and is defined as follows:

All business invitees, or representatives of business invitees, who were present in the main lobby of the Hyatt Regency Hotel of Kansas City, Missouri at the time of the collapse of two skywalks on July 17, 1981, and who suffered injury as a result, and all persons who assert claims for damages based on the death or injury of any person resulting from that collapse. "Business invitees" includes all persons, alive and deceased, who were guests of the Hotel, who came solely to attend the Tea Dance, or who were present in the Hotel on July 17, 1981, for any other business, personal or social purpose. The class does not include such persons who had settled their claims prior to January 10, 1983, or who have opted out of the federal class action described above, and does not include any such person who is bound by the final judgment entered by the Circuit Court of Jackson County, Missouri in *In re Skywalk Cases* on January 6, 1983.

3. The Settling Defendants agree to pay compensatory damages to all members of the class as provided in paragraph 4.

4. Every person who establishes that he is a member of the plaintiff class ("Class Member") shall be entitled to choose among four courses of action:

(a) he may receive a payment of $1,000 in return for a full release of all claims against all defendants participating in the settlement; such a Class Member need not prove any injury, but may be required to otherwise prove his membership in the class, and such Class Member will not receive any supplemental compensation from the fund described below;

(b) he may negotiate a full settlement of his claims on any terms he may reach; such a Class Member will not receive any supplemental compensation from the fund described below;

(c) he may have the amount of his compensatory damages determined by a three-person arbitration panel (with one arbitrator selected by the plaintiff, one arbitrator selected by the Settling Defendants, and those two arbitrators selecting the third member of the arbitration panel, each of whom must reside in the Western District of Missouri); defendants shall pay the costs of arbitration and the Class Member shall pay his own counsel fees and expenses in connection with the arbitration, but shall be entitled to reimbursement by the Settling Defendants for such fees and expenses if the arbitration award exceeds the highest settlement offer made to him by defendants; or

(d) he may have the amount of his compensatory damages determined by a jury trial (or, if the parties agree, by a non-jury trial) in federal court; the Class Member shall pay his own counsel fees and expenses in connection with a trial of compensatory damages under this option.

Class Members selecting options (c) or (d) shall be entitled to receive supplemental compensation from the fund described below.

5. If a Class Member elects to arbitrate or litigate the amount of his compensatory damages under subparagraphs 4(c) or (d) above, Settling Defendants will not contest liability for such damages, and such Class Member may not present evidence of the conduct of any Settling Defendant or of any other defendant participating in the settlement (see paragraph 13 below). Those defendants will not assert a defense based on the argument that such a Class Member was not entitled to recover any damages at all unless he had suffered actual physical impact and injury.

6. Crown Center Redevelopment Corporation will cause to be created a Settlement Fund of Three and One-Half Million Dollars ($3,500,000.00), comprised of a Basic Fund of Three Million Dollars ($3,000,000.00) and a Contingency Fund of Five Hundred Thousand Dollars ($500,000.00). The purpose of the Contingency Fund is to assure that all eligible class members receive supplemental compensation, and it may be drawn upon in the Court's discretion to pay such compensation only after supplemental compensation of $500,000.00 is paid from the Basic Fund. No interest shall be paid on or added to the Settlement Fund. Class Members shall be required to submit claim forms on or before June 1, 1983, in order to be eligible to participate in the settlement.

7. The Court shall award supplemental compensation out of the Settlement Fund to Class Members who elect to have their compensatory damages determined by arbitration or litigation under subparagraphs 4(c) or (d) above. Such supplemental compensation shall be no greater in relation to the actual damages of such Class Members than the relationship of the distributions received by the state class members from the Settlement Fund in *In re Skywalk Cases* to. the actual damages received by members of the state class. Any Class Member entitled to supplemental compensation may elect to take an amount as supplemental compensation equal to half of his compensatory damages rather than to await

an award of supplemental compensation by the Court.

8. After or contemporaneously with its determination of supplemental compensation, the Court may award such attorneys' fees and expenses as it deems proper to lead class counsel and assistant class counsel. Class counsel shall abide by any fee determination set by the Court. Williams & Connolly's fee application will consist only of the submission of bookkeeping records evidencing its time ·and expenses. Any such fees and expenses shall be awarded out of the remainder, if any, of the Basic Fund defined in paragraph 6.

9. If any funds remain in the Settlement Fund composed of both the Basic Fund and the Contingency Fund (that is, if all payments of supplemental compensation, fees and expenses total less than $3.5 million), the amount remaining·shall be contributed to a charity approved by the Court.

10. The interests of individual Class Members in the Settlement Fund prior to payment of supplemental compensation may not be assigned.

11. This agreement is conditioned upon, and subject to, (i) final approval of the terms of this agreement by the United States District Court for the Western District of Missouri; (ii) recognition and giving of full faith and credit by the United States District Court for the Western District of Missouri to the January 6, 1983, Final Judgment of the Circuit Court of Jackson County, Missouri; and (iii) dismissal by the United States District Court for the Western District of Missouri with prejudice of all claims members of the class have, have had, or might have against Settling Defendants and Participating Defendants (defined in paragraph 13 below) for punitive damages or, in wrongful death cases, for damages based upon aggravating circumstances, arising out of or in connection with the collapse of the two skywalks. Plaintiffs and ,Settling Defendants jointly shall request the Court, upon its final approval of this agreement, to enter a judgment dismissing all such claims with prejudice.

12. Each class member will preserve his individual claim for compensatory damages as provided in paragraph 4, except to the extent that, in wrongful death cases, the claim is based upon aggravating circumstances based on the conduct of any defendant. No Class Member who elects to arbitrate or litigate his claim for compensatory damages may introduce evidence of the conduct of any Settling Defendant or any Participating Defendant (defined in paragraph 13 below) or seek an instruction which would permit an award of damages for aggravating circumstances based on the conduct of said defendants.

13. Any defendant other than the Settling Defendants shall obtain a judgment from the United States District Court granting a full release from all claims for punitive damages and damages based on aggravating circumstances, and dismissal of all such claims which have been made against it as provided in paragraph 11, if such defendant agrees in writing with Crown Center Redevelopment Corporation to the terms upon which it will be bound by and obtain the benefits of this Agreement. Any release executed by a Class Member in connection with an individual settlement pursuant to subparagraphs 4(a) and (b), and the satisfaction of any award or judgment for compensatory damages entered pursuant to subparagraphs 4(c) and (d), shall extend to and inure to the benefit of the Settling Defendants, and any other defendant who complies with and meets the requirements of this paragraph ("Participating Defendants"). As of the date of this Agreement, Hyatt Corporation, Hyatt Hotels Corporation, and Eldridge & Son Construction Company are Participating Defendants.

14. The parties agree that the Court should deny all motions pending in the case as of the date of this Agreement, and that the Court's Order of January 4, 1983, should be vacated.

15. Hallmark Cards, Incorporated will make contributions to charity totalling Six and One-Half Million Dollars ($6,500,000.00) during the next four calendar years, beginning in 1983. These contributions will be

made at the rate of $1,625,000.00 per calendar year. Hallmark believes that it has no exposure for damages if this litigation were to go to trial, and these contributions are neither an admission of any fault nor a punishment. Rather, Hallmark makes these contributions as a healing gesture to help Kansas City put the tragedy of the skywalk collapse behind it. The contributions will be made to the following organizations:

| | |
|---|---|
| Heart of America United Way | $1,000,000.00 |
| Truman Medical Center Medical Foundation | $1,000,000.00 |
| Children's Mercy Hospital | $2,000,000.00 |
| Kansas City, Missouri City Board of Trusts (Weatherization Program) | $1,000,000.00 |
| Kansas City, Missouri Parks and Recreation Department (Zoo) | $1,000,000.00 |
| Heart of America Red Cross | $ 250,000.00 |
| Salvation Army of Kansas City, Missouri | $ 250,000.00 |

16. The parties shall jointly propose to the Court a form of notice to be given to Class Members.

17. If this Agreement is not approved by the Court, or is overturned or substantially modified by any appellate court, any party hereto shall have the right to withdraw from this Agreement, but any prior individual settlements will be valid and will not be affected by any such withdrawal.

18. The signatories to this Agreement agree to cooperate in effecting submission of the settlement it contemplates to the Court, and to use their respective best efforts to effect its consummation.

19. This Agreement and all negotiations, statements and proceedings in connection therewith shall not be construed as or deemed to be evidence of any admission or concession on the part of the Settling Defendants or the Participating Defendants and shall not be offered or received in evidence in any tribunal, or used in any way, as an admission, concession or evidence of any liability or wrongdoing of any nature on the part of any said defendants.

20. This Agreement contains the entire agreement among the parties and supersedes any and all prior negotiations, understandings, and agreements among the parties.

21. The provisions of this Agreement may be amended, modified or waived only by a written instrument duly executed by all parties.

22. This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. If any portion of this Agreement is held by a court to be unenforceable, the rest of the Agreement shall still be valid, unless otherwise specified by the court.

23. Each of the Settling Defendants represents and warrants that it has taken all corporate action and has secured the consents of all persons necessary to authorize the execution of this Agreement and performance of all its obligations hereunder.

24. This Agreement has been prepared for execution by each of the parties, and may be executed in any number of counterparts, all of which, when taken together, shall constitute a single agreement.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the date first above written.

WILLIAMS & CONNOLLY

By /s/ Irving Younger
    Irving Younger

By /s/ Paul M. Wolff
    Paul Martin Wolff

Co-Lead Federal Class Counsel

CROWN CENTER REDEVELOPMENT CORPORATION

By /s/ F. Keith Kelly

HALLMARK CARDS, INCORPORATED

By /s/ Charles J. Egan, Jr.