In Re FEDERAL SKYWALK CASES.

(Hyatt Regency Hotel Disaster, July 17, 1981).

No. 81–0945–A–CV–W–5.

United States District Court, W.D. Missouri, W.D.

Jan. 4, 1983.

Order Jan. 5, 1983.

Reconsideration of Contempt Order Granted Jan. 7, 1983.

Opinion Vacated Jan. 13, 1983.

Irving Younger, Williams & Connolly, Washington, D.C., Robert Gordon, Gordon & Whitaker, Kansas City, Mo., for plaintiffs representing class.

Patrick McLarney, Shook, Hardy & Bacon, Kansas City, Mo., John Shamberg, Schneider, Shamberg & May, Shawnee Mission, Kan., Max Foust, Morris & Foust, Kansas City, Mo., for plaintiffs-intervenors.

Robert L. Driscoll, Lawrence M. Berkowitz, Charles W. German, John C. Aisenbrey, Matthew J. Verschelden, Kansas City, Mo., and Hughes, Hubbard & Reed, Robert J. Sisk, John M. Townsend, Norman C. Kleinberg, New York City, Ronald A. Stern, Washington, D.C., for Crown Center Redevelopment Corp. and Hallmark Cards, Inc.

Niewald, Risjord & Waldeck, Michael E. Waldeck, Kansas City, Mo., for Hyatt Corp. and Hyatt Hotels Corp.

Shughart, Thomson & Kilroy, Thomas J. Leittem, Thomas F. Fisher, Kansas City, Mo., for Patty Berkebile Nelson Duncan Monroe Lefebvre Architects Planners, Inc.

Blackwell, Sanders, Matheny, Weary & Lombardi, Larry L. McMullen, Kansas City, Mo., for Concordia Project Management, Inc.

McAnany, Van Cleave & Phillips, Bill E. Fabian, James R. Goheen, Kansas City, Kan., for Eldridge & Son Construction Co., Inc.

Brown, James, Rabbitt, Whaley, McMullin & Pitzer, Donald L. James, St. Louis, Mo., for Gillum-Collaco, Gillum-Collaco Consulting Structural Engineers, Inc. and Jack D. Gillum Associates.

Jackson & Sherman, Joseph A. Sherman, Patrick Lysaught, Kansas City, Mo., and Miller & Glynn, Kevin E. Glynn, Kansas City, Mo., for Havens Steel Co.

Dietrich, Davis, Dicus, Rowlands & Schmitt, Heywood H. Davis, Kansas City, Mo., for Marshall & Brown, Inc.

John Campbell, Campbell & Bysfield, Kansas City, Mo., for Seiden & Page, Inc.

Joseph Moore, Moore & Willy, Kansas City, Mo., for H.R. Inspection Services, Inc.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

The plaintiffs have moved this Court for an order adjudicating the defendants in contempt for making unauthorized contact with members of the federal court class action which was certified on October 29, 1982. *See In Re Federal Skywalk Cases,* 95 F.R.D. 483 (W.D.Mo.1982). They contend that the defendants improperly communicated with absent members of the class, in violation of Rule 23(e) of the Federal Rules of Civil Procedure and of Disciplinary Rule 7–104 of the Missouri Code of Professional Responsibility, through certain activities surrounding the certification of a class action in the Circuit Court of Jackson County, Missouri on December 6, 1982. The plaintiffs seek an order granting the following relief: (1) Declare all post-December 6, 1982 opt-outs and releases from the federal class void; order defendants to send a corrective notice at their expense; and require any class member who still seeks to opt out to appear at a hearing so that the Court can determine whether the choice is informatively made; (2) Enter default judgments against the defendants on the issues of compensatory and punitive liability; (3) Disqualify counsel for defendants for violating Disciplinary Rule 7–104; (4) Withhold full faith and credit from any state court judgment that might issue in this matter; and (5) Award costs to the plaintiffs and assess attorneys' fees against the defendants and their counsel.

A hearing was initially set on this matter for December 21, 1982, but was continued so that the Court might further its own research on plaintiffs' motion and so that the parties might have additional time to resolve the conflict without the aid of judicial intervention. *See In Re Federal Skywalk Cases,* No. 81–0945, Slip op. (W.D.Mo. Dec. 20, 1982). The problem was not resolved by the parties. On January 3, 1983, the Court conducted an evidentiary hearing on plaintiffs' motion. Briefs have been submitted by the plaintiffs and defendants. The plaintiffs who have cases in state court were invited to present arguments in support of or opposition to the motion, but did not. No party has intervened in plaintiffs' motion. Having considered the evidence, briefs and oral arguments, the Court grants, for the reasons which follow, the plaintiffs' motion to hold certain defendants in contempt of this Court.

## I. FINDINGS OF FACT

1. On January 25, 1982, this Court certified a Rule 23(b)(1), or mandatory, class action in this litigation on the issues of liability for compensatory and punitive damages, and on the amount of punitive damages. *See In Re Federal Skywalk Cases,* 93 F.R.D. 415 (W.D.Mo.1982). The mandatory class was composed of "all business invitees who were present in the main lobby of the hotel at the moment the two skywalks collapsed" on July 17, 1981. *Id.* at 421. It was opposed by all defendants and by a group of plaintiffs who had cases filed in the Circuit Court of Jackson County, Missouri. The Eighth Circuit Court of Appeals reviewed the certification order under an interlocutory appeal and, in a split decision, vacated the mandatory certification order on June 7, 1982. *See In Re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982).

2. In September of 1982, the plaintiffs moved this Court to certify either a modified mandatory class action or a voluntary class action. The Court denied the motion at that time. *See In Re Federal Skywalk Cases,* 95 F.R.D. 479 (W.D.Mo.1982).

3. In October of 1982, the plaintiffs moved for only a voluntary class action. All parties, including plaintiffs-intervenors, briefed the motion and presented oral arguments at the certification hearing. On October 29, 1982, this Court certified a Rule 23(b)(3), or voluntary, class action on the issues of compensatory and punitive damage liability, and on the amount of punitive damages, if any, for the collapse of the skywalks. *See In Re Federal Skywalk Cases,* 95 F.R.D. 483 (W.D.Mo.1982). The voluntary class was composed of "all business invitees, or the representatives of business invitees, who were injured as a result of the collapse of two skywalks at the

Hyatt Regency Hotel of Kansas City, Missouri on July 17, 1981." *Id.* at 485. Two and one-half weeks later, the Court conducted a hearing on the matter of the notice to be sent to class members under Rule 23(c)(2). All parties, including plaintiffs-intervenors, briefed the matter of notice, submitted proposed forms and presented oral arguments. After the hearing, but prior to the issuance of any order approving notice, the plaintiffs-intervenors, without ever seeing any order, moved the Court to certify the order for interlocutory appeal and to stay the order. The Court issued an order approving the form of notice on November 16, 1982. *See In Re Federal Skywalk Cases,* No. 81–0945, slip op. (W.D.Mo. Nov. 16, 1982). After the November 16, 1982 order issued, the Court treated the plaintiffs-intervenors' motion for certification of an interlocutory appeal and for a stay as if it had been properly filed after the order issued and denied the motion. *See In Re Federal Skywalk Cases,* No. 81–0945, slip op. (W.D.Mo. Nov. 17, 1982). The plaintiffs-intervenors and five defendants sought either extraordinary or appellate relief from this Court's October 29 certification order and the November 16 order approving a form of notice. The relief sought was summarily denied by the appellate court on November 19, 1982. The plaintiffs-intervenors then sought similar relief from a full panel of the appellate court. That relief was summarily denied on December 22, 1982.

4. On December 6, 1982, defendants and the plaintiffs who were formerly designated as plaintiffs-intervenors in this Court jointly moved in state court for the conditional certification of a voluntary class action under Rule 52.08(b)(3), (c)(2) and (3) of the Missouri Rules of Civil Procedure, for approval of a form of notice and for the tentative approval of a class-wide settlement. A brief proceeding was conducted in state court on the morning of December 6, 1982 at which the state court conditionally certified a voluntary class action, approved a form of notice and tentatively approved a class-wide settlement. Though the state court was told that the plaintiffs-interve-

nors had met "with all plaintiffs' attorneys that have filed cases in state court," two members of the federal court class counsel team who have cases on file in state court did not meet with plaintiffs-intervenors and were not notified about the state court proceeding. No counsel appointed to represent the federal class was given notice of the state court proceeding. At the December 6, 1982 state court proceeding, the state court set a hearing on the final certification of the class action and on the final approval of the settlement for January 5, 1983. A form of notice was ordered to be issued immediately. No formal hearing was conducted on the form of notice and none was scheduled.

5. The class conditionally certified by the state court was defined as "all business invitees, or representatives of business invitees, who were present in the main lobby of the Hyatt Regency Hotel of Kansas City, Missouri at the time of the collapse of two skywalks on July 17, 1981 and who suffered injury as a result, and all persons who assert claims for damages based on the death or injury of any person resulting from the collapse." The tentative settlement provided, among other things, that each class member who can show that he was in fact in the main lobby of the hotel at the moment of the skywalks' collapse may elect to receive a payment of $1000 in exchange for a full release of all claims against all defendants participating in the settlement, without having to make any proof of injury. At the December 6, 1982 proceeding, the state court understood the conditional certification as a "manner and fashion in which to handle roughly some one hundred cases," (TR. 14), and as an expression of no opinion or "decision as to the propriety of the settlement" until January 5, 1983 (TR. 18, 32), and understood the settlement proposal as something "worth taking a more detailed look at." (TR. 32). The state court stated that it had not had time to "look over the order and the notice in detail" and had not studied class actions in "any great degree," but found that the notice and order were in proper form since the attorneys present at the proceeding informed him that it was fair. (TR. 33).

6. At the December 6 proceeding in state court, the state court was told by defense counsel that the proposed state court procedure "could be used to try to move all these cases" out of federal court, (TR. 25), and would bring the skywalk litigation "to a conclusion within approximately one year from this date." (TR. 27). The plaintiffs-intervenors additionally informed the court that they had been negotiating the settlement since November 1, 1982, and that the settlement was fair for the plaintiffs in state court. (TR. 10). The state court then informed the parties present at the proceeding that he had a niece and nephew who would be entitled, as a party in the class action, to share in the settlement. (TR. 31). No party present voiced any concern about Missouri Supreme Court Rule 51.07 requiring automatic disqualification if the court is related to a party who will share in the judgment of the court. On December 28, 1982, a state court plaintiff who was not given notice of the December 6, 1982 proceeding moved for the disqualification of the state court judge under Rule 51.07. On December 20, 1982, the niece and nephew of the state court judge received $1000 each from the defendants participating in the settlement in exchange for a full release of their claims. On January 4, 1982, the state court disqualified itself.

6A. Immediately after the December 6, 1982 proceeding in state court, a press conference was conducted by the parties who participated in the proceeding. The press conference was given extensive coverage by the local and national print, radio and television media. On December 8, 1982, a one-page notification regarding the state court class action appeared in a local newspaper. On the same day, two named representatives of the state court class action appeared on a nationally televised morning show. With their counsel standing at their side, one of the named representatives stated on national television, that they "will seek an amount for compensatory damages and *will* receive a portion of the punitive damages of the $20 million dollar figure." During the days immediately following the proceeding in state court, this Court was inundated with inquiries from confused class members.

7. An emergency hearing was conducted on December 7, 1982, on the plaintiffs' motion to have the defendants show cause why they should not be held in contempt of court for unauthorized communication with absent class members. The Court was asked to issue a supplemental notice. Finding that the public was utterly confused and that a supplemental notice at that time would only compound the confusion, the Court decided not to issue a supplemental notice. *See In Re Federal Skywalk Cases,* No. 81–0945, slip op. (W.D.Mo. Dec. 9, 1982).

8. A clause in the tentative settlement agreement approved by the state court provided for immediate payment of $1000 to any person present in the hotel lobby at the moment of the collapse in exchange for a full release of all claims and without having to make any specific proof of injury. During the two weeks immediately preceding the national holiday season, the $1000 payments commenced. Extensive local and national media coverage was given to the event. As of January 3, 1983, 999 payments of $1000 had been made.

9. The form notice issued by the state court was not the product of an adversarial hearing. The notice of the tentative settlement:

(a) Did not point out that it is tentative and may be withdrawn by the defendants if the defendants are not satisfied with the number of plaintiffs accepting the settlement by January 4, 1983;

(b) Did not point out that the settlement may fail to be approved by the Circuit Court Judge or, if the Circuit Court Judge does approve the settlement, that his order may be reversed on appeal;

(c) Did not point out that, in the event the settlement is not finally approved, members of the class who have opted out of the federal case in order to take advantage of the settlement of the state case will be left in neither case. Further, no provision was made for reinclusion of those class members in the federal class;

(d) Did not mention the fact that the proposed settlement of the state case was negotiated without notice to class counsel in the federal case or all parties in the state court;

(e) Did not point out that the settlement does not in fact provide for a $20 million class settlement fund to be distributed to all class members. Rather, the settlement provides that a settling class member shall receive nothing from the settlement fund, and that the fund shall be reduced pro rata by the amount of the settlement. Only a class member who elects to try his or her case for compensatory damages will be entitled to share pro rata in whatever is left of the $20 million settlement fund;

(f) Did not mention any date by which defendants will be required to pay out any part of the class settlement fund;

(g) Did not mention whether or not interest will be paid on the fund;

(h) Did not refer to any evidence concerning the conduct of defendants or their net worth;

(i) Did not make clear that a class member must decide whether or not to opt out by December 28, one week *before* the hearing to determine whether or not the settlement is fair and proper. Thus, a class member must make a decision without the benefit of the basic facts which bear upon the wisdom of the decision.

(j) Did not mention the amount and terms of any prior settlements entered into between the defendants and individual plaintiffs;

(k) Did not mention that this Court has before it a motion made by counsel for the class seeking sanctions against the defendants Crown Center Redevelopment Corp. and Hallmark Cards for their interference with the full presentation of facts necessary to evaluate this case;

(*l*) Did not mention that there are as yet unresolved questions of whether the state court has the power to take any actions with respect to a class member who lives in a state other than Missouri;

(m) Did not mention that an earlier proposed settlement was for more money than the state settlement, was not contingent, could not be reduced, and did not give the defendants the opportunity to withdraw;

(n) Did not mention that the proponents of the state class had strongly opposed the earlier settlement on the ground that it was too small;

(*o*) Did not mention the evidence that has been developed on the culpability of the defendants since the earlier settlement was negotiated;

(p) Did not mention that the proponents of the state court class had opposed every effort to certify a class in the federal court;

(q) Did not explain why the proponents of the state court class now embrace the class action as the appropriate manner to settle the litigation arising out of the Hyatt Hotel disaster;

(r) Did not set forth whether any class representatives or their attorneys have had any discussions with the defendants regarding the settlement of their individual cases and what was the substance of said discussions; and

(s) Did not mention that the state court had reservations about presiding over the class because his relatives were members of the class.

10. On August 28, 1981, when an early class action complaint was on file in the state court, the counsel subsequently appointed to represent the class certified by this Court informed a member of the Defendants' Liaison Committee that they should comply with Disciplinary Rule 7–104(A)(2) when contacted by a class member not represented by counsel other than class counsel. The class counsel did not suggest that any defense counsel had acted improperly as of August 21, 1981.

11. By December 5, 1982, 55 persons had opted out of the federal class. On the morning of December 6, 68 persons opted out. From December 7, 1982 to this date, 182 persons have opted out. The total opt-outs as of this date is 335. Over 700 notices were sent to class members.

## II. CONCLUSIONS OF LAW

The circumstances which have culminated in the plaintiffs' motion to have the defendants held in contempt of this Court for making unauthorized contact with the members of the federal court class action who had not opted out of the federal class action prior to the December 6, 1982 conditional certification of a class by the state court are unprecedented. The plaintiffs contend that the unauthorized contact commenced when the defendants joined with the plaintiffs-intervenors and petitioned the state court to have certain information disseminated to federal class members who were exclusively represented by counsel appointed to represent the class. The contempt motion would not have been filed in this Court if the actions taken by the parties to the state court proceeding had dealt only with the victims who had cases on file in state court and who had opted out of the federal court class action. Unfortunately, the composition of the class conditionally certified in state court reached well beyond the plaintiffs who had opted out of federal court. The plaintiffs contend that the defendants' actions in state court and through the media, which were commenced after they failed in their attempt before the Eighth Circuit Court of Appeals to set aside the certification of the federal class, have completely disrupted the orderly administration of the class action pending in this Court and warrant a finding of contempt. The Court agrees with that contention.

### A. Contempt as an Appropriate Remedy.

■ Civil contempt proceedings are remedial in nature and are designed to coerce obedience to a Court decree, *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911), and to compensate a complainant for losses suffered as a result of the contempt. *McCrone v. United States*, 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939). The precise form of sanctions to be imposed following a finding of civil contempt is a matter generally committed to sound judicial discretion. The Court should consider the character and magnitude of the harm threatened by the defendants, the ramifications in future class actions of allowing the harm to go unremedied, and the probable effectiveness in bringing about a desired result. *See United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947).

### B. Actions Warranting Contempt.

■ The Defendants' Liaison Counsel was notified in August of 1981 by counsel subsequently appointed to represent the class that any communication with members of the class who were not individually represented by attorneys constituted a breach of Disciplinary Rule 7–104 if class counsel was not notified of the communication. On October 29, 1982, this Court expressly created an attorney-client relationship between the counsel appointed to represent the class and those class members who did not have individual attorneys representing them. *See Gulf Oil v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 723 (W.D. Ky.), *appeal summarily dismissed without opinion*, 659 F.2d 1081 (6th Cir.1981); *Resnick v. American Dental Assoc.*, 95 F.R.D. 372, 376–77 (N.D.Ill.1982). With respect to class members who intervened or entered an appearance through their own counsel, the attorney-client relationship existed, but may have been more limited in scope. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (class members accorded right to enter an appearance through counsel under Rule 23(b)(3)). By their actions in state court and through the local and national media, the defendants ignored the attorney-client relationship and, as a consequence, violated Disciplinary Rule 7–104.

■ Disciplinary Rule 7–104 provides as follows:

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to

be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. The Disciplinary Rule clearly applies in suits which proceed as a class action. *Gulf Oil, supra* 452 U.S. at 104 n. 21, 101 S.Ct. at 2202 n. 21 (1981). A Court need not, as the defendants contend, expressly order the defendants to comply with the Disciplinary Rule. The defendants contend that since the plaintiffs foolishly failed to ask this Court for a gag order and that since a gag order was never entered, they were not prevented from communicating with class members. This is not the teaching of the Supreme Court in *Gulf Oil* which noted that Disciplinary Rule 7–104 properly imposed restraints on some forms of expression in class actions. *Id. See also Impervious Paints, supra* (no gag order entered). In addition, the defendants' assertion that they could communicate directly with unrepresented class members is not consistent with their actions in state court. Rather than send letters directly to class members, the defendants sought the vehicle of a state court class action to disseminate information to class members.

Where parties adverse to the class have communicated a reasonable settlement offer to counsel appointed to represent the class and the appointed counsel have rejected that offer, the adverse party should petition the Court to have a hearing on the proposed settlement, to make findings and to issue notice of the terms of proposed settlement. *See Gulf Oil, supra*. After a hearing, the class members can be notified of the terms and the parties can be given an opportunity to present their positions. *See Id*. This type of approach is consistent with the supervisory powers of a Rule 23 class action and the dictates of Disciplinary Rule 7–104. With judicial supervision, adverse parties may communicate beyond the regular course of business. In the case at bar, however, this Court was never notified of any settlement negotiations, any offers or the rejection of any offers, and was not moved to consider any offers or make any offers known to absent class members.

The defendants' actions evidence a deliberate attempt to evade this Court's supervisory authority, a violation of Disciplinary Rule 7–104 and the disruption of the entire skywalk litigation. They joined in the misrepresentations made to the state court who honorably accepted their representations without question. They did not inform the state court that counsel to the federal class action who had cases on file in state court were deliberately not notified of the proceeding. They did not tell the state court that they were about to engage in a media blitz, knowing that the state court was planning to take a more detailed look at the settlement proposal. They did not tell the state court that they were about to begin paying out $1000 before the state court could finally approve those payments. They did not caution the state court about the ramifications of his sitting on a case where members of his family would share in the judgment. They did not tell him that there was no guarantee that the litigation could be finally resolved within one year. And they did not make clear to him that the order which he signed had an effect on many more than approximately 100 cases.

If this Court permits the defendants to make an end-run around its supervisory authority, the principle that will be established for future class actions is unconscionable. Defendants would, from this day forward, be free to select the counsel of their choice in attempting to defeat a class action. If one group of counsel did not agree with them, they would be at liberty to persuade another group of counsel to file a class action in another forum where jurisdiction is possible. Of course, such intrigue could be stopped by the court subsequently petitioned. But, as this case demonstrates, a second court could conditionally certify a class based on misleading statements and without a full hearing. Other parties could engage in a similar public relations blitz. The havoc is nearly irremedial. In addition, this scenario might extend to every forum where jurisdiction is possible. In this case, for example, where there are many victims

who reside in many states, a class action claiming the same membership could be filed in many state and federal trial courts. This Court could not simultaneously honor its supervisory duties under Rule 23 and allow such activity to take place.

The timing of the defendants' acts echo their intent. No conditional certification or proposed settlement was presented to the state court after the Eighth Circuit Court of Appeals vacated this Court's certification of a class action. The activity in state court was only initiated after the appellate court refused to decertify the class and a trial of this case became imminent. It is not coincidental that every attorney who had a case on file in state court knew about the December 6 proceedings in state court except for the two attorneys who were on the federal class counsel team. The defendants have joined forces with the plaintiffs-intervenors and have fought a class action in this Court. Both defendants and plaintiffs-intervenors warned this Court against allowing itself to be rushed headlong into reversible error by approving a form of notice until after this Court had a full opportunity to evaluate the legal issues; the same refrain was not trumpeted in state court. They asked the state court to issue a form of notice before a hearing could be conducted.

The damage caused by the actions of the defendants and their agents cannot be entirely undone. But the Court must satisfy itself that the opt-outs received after December 6, 1982 are based on complete information. Accordingly, the Court orders that:

(1) All efforts to opt out of the federal class made after December 6, 1982, whether reflected in opt-out certificates or releases purchased by the defendants for cash settlements, are void and of no effect:

(2) The parties shall propose, and the Court will approve, a corrective notice to be sent, at defendants' expense, to all identifiable class members. The notice shall include a summary of the developments in this litigation, and a copy of this order;

(3) Class members shall have one week from the filing of the corrective notice to inform the Court of their desire to opt out of the federal class;

(4) If $1000 was paid to any class member, that $1000 shall be deemed as an advance of $1000 on any future recovery. If no future recovery is ever made, the defendants may take appropriate legal means to recover the $1000.

This remedy permits class members who opted out prior to December 6, 1982 to consummate their deal in state court. It permits those who opted out after December 6, 1982 to rethink their decision and opt out again if desired. Those who received the $1000 payment may also opt out and claim the full $1000 without risking the possibility of no recovery, or may remain in the class and possibly recover more than $1000. The remedy lessens some of the confusion which has arisen throughout the course of the skywalk litigation and permits the state court, if it chooses, to adjudicate the issues raised by the parties who are clearly before it. In addition, the remedy does not affect the $1000 payments made to persons not a member of the federal class. Further, this order is not meant as any indication that the Court is adverse to a class-wide settlement. The Court simply intends by this order that any settlement be reached in accordance with Rule 23.

The Court neither enters a default judgment against the defendants nor disqualifies their counsel. The Court does award the plaintiffs the attorneys' fees which they incurred in bringing this motion and in correcting the actions of the defendants. The merits of this case will be litigated beginning on January 10, 1982. The composition of the class will be known before the evidence commences. *See, Postow v. OBS Federal Savings & Loan Ass'n,* 627 F.2d 1370 (D.C.Cir.1980).

C. According Full Faith and Credit to Any State Court Judgment.

The plaintiffs have asked the Court not to give full faith and credit to any judgment entered in state court on the ground

that the parties were denied due process of law in state court. While the motion may someday have merit, it is presently premature. The state court has not yet finally acted. It may only finally certify a class composed of those persons who opted out of federal court, or disqualify itself and begin the process anew. Until the state court has finally acted, this Court will reserve ruling on the plaintiffs' full faith and credit motion.

### III.

Accordingly, it is hereby

ORDERED that the plaintiffs' motion to hold the defendants in contempt of Court is granted and that the parties proceed consistent with this opinion.

### ORDER

In accordance with this Court's order of January 4, 1983, the Court has received a proposed notice from plaintiffs and suggestions in opposition to the proposed notice from several defendants. No defendant has submitted a proposed notice form. No other plaintiffs have intervened or otherwise submitted any suggestions with regard to the proposed notice. The Court has reviewed the parties' suggestions and drafted a "Supplemental Legal Notice" which is attached to this order as Exhibit A.

The "Supplemental Legal Notice" should be mailed immediately. A stamped envelope addressed to the Clerk of this Court should be included. The exclusion form should be attached to the Supplemental Notice. The copies of the two orders should be enclosed with the Notice but not attached.

### COURT'S EXHIBIT A

### SUPPLEMENTAL LEGAL NOTICE

THIS SUPPLEMENTAL LEGAL NOTICE CONTAINS IMPORTANT INFORMATION AFFECTING YOUR RIGHTS IN THE SKYWALK LITIGATION. YOU HAVE NOT RECEIVED THIS INFORMATION BEFORE. ACCORDINGLY, PLEASE READ THE FOLLOWING CAREFULLY.

1. Our records indicate that after December 6, 1982, the date of a proposed settlement of a class action in state court, you opted out of the federal court class action.

2. The Federal Court has determined that the state court notice which you may have received inadequately conveyed the information necessary to permit a class member to make an intelligent decision.

3. In addition, the Federal Court has determined that the only persons who participated in the state court proceeding were those who already favored the proposed settlement.

4. In addition, the Federal Court has determined that the television and newspaper publicity about the proposed state court settlement has been misleading and incomplete.

5. Accordingly, the Federal Court has determined that your opt-out may be tainted, in the sense that it is not based upon *all* relevant information and upon a balanced presentation of the advantages and disadvantages of the proposed state court settlement. The Federal Court has, therefore, declared your opt-out invalid and returned you to the federal class.

6. Should you wish *now* to opt out of the federal class, you may do so, but your decision should be based upon the Federal Court's notice of November 16, 1982 (a copy of which is enclosed), the Federal Court's order of January 4, 1982 (a copy of which is enclosed), this notice, and any knowledge of the proceedings you may have developed on your own.

7. To opt out of the federal class, you should either:

(1) Sign and deliver the attached "Request for Exclusion from the Class" to the office of the Clerk, Room 201, 811 Grand Avenue, Kansas City, Missouri, no later than 9:00 A.M. on Wednesday, January 12, 1983;

OR

(2) Sign and mail the attached "Request for Exclusion from the Class" to the office of the Clerk, Room 201, 811

Grand Avenue, Kansas City, Missouri 64106. The mailed "Request" must be postmarked on or before 12:00 P.M. on Tuesday, January 11, 1983.

REQUEST FOR EXCLUSION FROM CLASS ACTION

The undersigned requests to be excluded from the plaintiff class that has been certified in this action.

Dated: _____, 1983.

_____
Signature

Please Print:

1. Your name or names: _____
2. Your address: _____
   Street

_____
City

_____
State        Zip Code

### ORDER

It is hereby

ORDERED that the defendants' motion for reconsideration of the January 4, 1983 contempt order is granted. It is further

ORDERED that the issuance of the Supplemental Notice is stayed pending further order of the Court.

### ORDER

It is hereby

ORDERED that all pending motions are denied. It is further

ORDERED that this Court's order of January 4, 1983 is vacated.