**Paul F. ROMSTADT, et al., Plaintiffs,**

v.

**APPLE COMPUTER, INC., Defendant.**

**No. 3:94CV7612.**

United States District Court,
N.D. Ohio,
Western Division.

Oct. 24, 1996.

As Amended Dec. 10, 1996.

Stanley M. Chesley, Glenn D. Feagan, Robert Alan Steinberg, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Brian J. Ballenger, Dean A. Horrigan, Troy L. Moore, Scott, Ballinger & Moore, Toledo, OH, for plaintiff Romstadt.

Stephen A. Rothschild, Robert A. Koenig, John C. Barron, Neema M. Bell, Shumaker, Loop & Kendrick, Toledo, OH, for defendant Apple Computer, Inc.

CARR, District Judge.

This is a diversity action in which the defendant Apple Computer, Inc. (Apple) has moved for stay of further proceedings (Doc. 95) and the plaintiff Paul F. Romstadt has moved for a preliminary injunction. (Doc. 97). In addition, plaintiff's class certification motion (Doc. 87) is decisional.

For the reasons that follow, defendant's motion to stay shall be overruled, without prejudice to renew, plaintiff's motion for pre-liminary injunction shall be overruled, and plaintiff's motion for class certification shall be initially and conditionally entered, subject to revision.

## Background

Mr. Romstadt purchased a computer produced by Apple. When he did so, he believed that the computer contained a Motorola 68040 microprocessor with a floating point unit (FPU) to aid in mathematical computations. Contrary to that expectation, the computer had a Motorola 68LC040 microprocessor, which did not have the FPU. In an order entered August 6, 1996 (Doc. 86), I denied Apple's motion to dismiss, and in another order entered on September 3, 1996, I entered summary judgment in favor of the plaintiff and against Apple on Mr. Romstadt's claim under Ohio's Consumer Sales Practices Act, O.R.C. § 1345.02. (Doc. 88). At that point, I anticipated turning to the question of class certification, which had been postponed pending determination of the merits of Mr. Romstadt's claim—it having appeared that such postponement might reduce the expense to all concerned, including Apple.

Unbeknownst to me or the plaintiff or his counsel, Apple had been engaged in settlement discussions in another case arising from the same factual situation. That case, *Lizcano v. Apple Computer, Inc.*, No. C–363–96–F (Dist. Ct., Hidalgo Co.), filed in a state court in Texas after this case had been filed, had involved the taking of some depositions, production of documents by Apple, and settlement discussions. According to Apple, settlement as to all matters in dispute—with the exception of attorneys' fees for plaintiff's counsel in that case—was reached prior to entry of the above-referenced orders in this case. The issue of those fees was submitted to mediation, and the parties to the Texas litigation accepted the mediator's recommendation that plaintiff's counsel in that case be paid $2,000,000 as part of the settlement agreement.

On September 18, 1996, the judge in the Texas case was presented with a stipulation of facts, a second amended complaint, and a

motion to appoint class representative and counsel, approve class and claimant notices, and give preliminary approval to the settlement. After a hearing that appears to have lasted no more than a few minutes, during which the Texas judge was told nothing of significance about the pendency of this case, that Judge asked, "What do you-all want me to sign?" On being referred to "[t]he order, Your Honor. The last document I applied," the court said, "All right. I've signed the order certifying the class action, and the rest of your agreements will be approved by the Court." (Doc. 96, Exh. 16, at 11). Thus, at the same time, the Texas judge certified a class and preliminarily approved the settlement agreement that would bind that class.

Except for a passing reference to the fact that this case was pending in this court,[1] the Texas judge was told nothing of significance about this case. He was not told that this case began before the Texas case, included the filing of about 90 pleadings, led to entry of the orders referenced above, and involved a consumer protection statute that, according to the parties in this case, including Apple, is substantially equivalent to the Texas statute on which that case is based. The parties did not tell the Texas judge that neither Mr.

Romstadt nor his attorney had been given notice of the settlement or its proposed submission for approval. Nor was the Texas judge advised that the settlement was in its material respects similar to a settlement proposal that had been rejected by Mr. Romstadt.[2]

After the injunction hearing before me on October 14, 1996, Texas plaintiffs' counsel and counsel for Apple appeared before the Texas court—but before a different judge— and conducted further proceedings. As with the original proceedings in that court, no notice was given to Mr. Romstadt or his counsel of those further proceedings. Those proceedings appear to have been prompted by concerns expressed by me during the October 14, 1996, injunction hearing.[3]

Because the plaintiff in the Texas case and Apple chose not to inform the participants in this case about the Texas court's approval of class certification, the proposed settlement or its submission for preliminary approval, Mr. Romstadt and his counsel did not have an opportunity to appear. Nor were they able to inform the Texas judge about the salient aspects of this litigation and their views on the proposed entry of the order preliminarily approving the settlement.[4]

1. "The only other thing I'd like to advise the Court of is that there is one other class action that is pending, I believe it's up in Ohio, and we just want to bring that to the Court's attention. However, it is our understanding that that class action has—that it has not been certified and there is no bar to this Court conditionally certifying this class action for purposes of the proposed settlement." (Doc. 96, Exh. 16, at 4).

2. I note that, although Apple in this court and the parties in the Texas proceeding have referred on frequent occasion to alleged misrepresentations by Mr. Romstadt's counsel, at no point, to my recollection, has counsel for Apple challenged the plaintiff's contention that the settlement that has been accepted by Texas counsel was the same, or substantially the same, as the settlement that was rejected by Mr. Romstadt.

3. Among those concerns was, as I had earlier noted during the October 2, 1996, telephone conference, the fact that no notice was to be given of the existence of this case or that I had entered summary judgment on the merits in favor of the plaintiff. Contrary to the representations of Apple's counsel before me on October 14, 1996, its Texas counsel did not seek, during the further proceedings on October 18, 1996, to have such

notification included in the class notice. Instead, Apple's lawyer stood by without comment as *plaintiff's* counsel in the Texas case stated he would be "quite comfortable" if such information were *not* included in the class notice. (Doc. 106, Exh. at 19). The Texas judge decided not to include that information in the class notice.

Because there is a "reality that absentees tend to lack a real understanding of the actions supposedly pursued in their names," *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 789 (3d Cir.1995), I remain of the view that it is unlikely that members of the class can make an informed decision about the proposed settlement unless they are notified that summary judgment has been entered on the merits in favor of a class representative and against Apple. The conduct of Apple's counsel in Texas is, to say the least, troublesome, as I had assumed, in light of the unequivocal representations of its counsel, that steps would be taken to include such information in the class notice.

4. The further ex parte proceedings in Texas, though considerably longer than the original hearing in that court, do not resolve the due process violations attendant on the original proceeding and the resulting concerns that I express

### Violation of Due Process

■ Denying Mr. Romstadt notice and an opportunity to be heard when the proposed settlement and related matters were submitted to the Texas court for its consideration was, in my view, a denial of due process. To state a due process claim, a plaintiff must show 1) a deprivation; 2) of life, liberty, or property; 3) under color of state law; 4) without due process of law. *Brotherton v. Cleveland*, 923 F.2d 477, 479 (6th Cir.1991). By conducting hearings that were ex parte as to Mr. Romstadt and granting conditional approval to the settlement agreement submitted by counsel in the Texas case, the Texas court under the color of state law deprived Mr. Romstadt of a property interest in the judgment granted on the merits by this court.

The due process clause of the Fourteenth Amendment protects "a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). In order to have a protected property interest, a person must have more than an abstract need or desire for it or a unilateral expectation of it; rather, he or she must have a "legitimate claim of entitlement" to it. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Leis v. Flynt*, 439 U.S. 438, 442, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979). This property right must also stem from an independent source of law. *Id.*

In this case, Mr. Romstadt possessed a "legitimate claim of entitlement" to his judgment on the merits as entered by this court. Although the precise amount of damages and the exact size of the class had yet to be determined, Mr. Romstadt secured his claim against Apple through an independent source of law, namely a decision on the merits by a court with proper jurisdiction. Such an entitlement cannot be characterized as "abstract." Nor was this property interest

unilaterally expected, as Apple, too, was obligated by law to compensate Mr. Romstadt at some point in the future.

Mr. Romstadt, whom Texas plaintiff's counsel was undertaking to represent as a member of the class that he was proposing for certification, had secured a property right in his judgment as granted by this court. Thus, Mr. Romstadt had a due process right to notice and an opportunity to be heard before the Texas court preliminarily approved that settlement agreement. It is clear that, due to the ex parte and secretive nature of the Texas proceedings that lead to the conditional approval of the settlement agreement, Mr. Romstadt was deprived of his due process rights. As explained by one court, the only "universal requirement" of due process "is that a person receive notice and an opportunity to be heard." *Burgess v. Miller*, 492 F.Supp. 1284, 1290 (N.D.Fla. 1980).

Mr. Romstadt received no such notice and opportunity to be heard. Texas counsel and Apple improperly circumvented Mr. Romstadt by engaging in proceedings that were, as to him, ex parte. More importantly, the Texas court acting under the color of state law had a due process duty to provide Mr. Romstadt with an opportunity to be heard before it took action that might and, in this case, did jeopardize Mr. Romstadt's property interests and those of the class he sought to represent.

Contrary to Apple's contentions, the decision in *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D.Ohio 1992), does not foreclose the action I am taking here. In that case, competing class counsel complained unsuccessfully about the secrecy of negotiations leading to a settlement by other class counsel (who happens to be counsel for Mr. Romstadt in this case). Answering that concern, the court stated, "[t]he law does not require the participation in settlement negotiations of

---

in this order. Most importantly, neither of the Texas judges has been informed that the proposed settlement is similar in its material details to a proposal rejected by Mr. Romstadt. If anything, the transcript of the further proceedings in Texas underscores the danger that such ex parte proceedings pose to other class representatives.

That transcript shows: the apparent occurrence of off the record conversations between the new judge and Texas counsel (*id.* at 19) and unawareness on the part of the Texas judge and Apple's counsel of the language that the judge was being asked to delete from the original order (*id.* at 12–13).

other lawyers representing class members.... No requirement exists that either Class Counsel or the Defendants must inform other attorneys, ..., about their negotiations." *Id.* at 156.

I agree: neither Texas counsel nor Apple had to tell Mr. Romstadt about their negotiations. Once, however, those negotiations resulted in an agreement that was to be presented to the Texas judge, Mr. Romstadt—by virtue of his property interest created by this court's decision—became entitled to his due process rights, including, at a minimum, the right to be informed about the agreement, its anticipated submission to the Texas court, and notice of the date and time of the hearing for preliminary approval. That due process right in a property interest was not at issue in *Bowling*, which distinguishes that decision from this case.

Apple contends, in effect, that nothing meaningful occurred as a result of entry by the Texas court of the preliminary and amended orders of approval, so that Mr. Romstadt suffered no cognizable deprivation of his property right in the summary judgment decision by this court. In Apple's view, this preliminary event at most sets the stage for the final hearing, at which opponents, including Mr. Romstadt and his counsel, can be heard.

I disagree with Apple's claim that no injury has been done to Mr. Romstadt and the class that he seeks to represent as a result of the denial to them of notice and the opportunity to be heard. If nothing of importance was to occur, or would place any cognizable interest of Mr. Romstadt in jeopardy, why was it necessary to proceed in secrecy? If the settlement was as fair as the Texas parties contend, what danger could result from scrutiny in light of Mr. Romstadt's views?[5]

■ Prior to approving a preliminary settlement, a court must "independently and objectively analyze the evidence and circum-stances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 88–89 (3d ed. 1992). The court "acts as a fiduciary who must serve as guardian of the rights of absent class members ... [t]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.1975); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983); *Piambino v. Bailey*, 610 F.2d 1306 (5th Cir.1980). Finally, the proponents of the settlement bear the burden in showing that the agreement is fair, reasonable, and adequate. *See In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 785 (3d. Cir.1995).

In failing to inform the court of Mr. Romstadt's pending action, the Texas court was unable to scrutinize "independently and objectively" the settlement terms presented to it. By denying the opportunity for Mr. Romstadt to be heard, the Texas court thereby failed to learn that the settlement it was being asked to approve had already been rejected in this case. In addition, the Texas court did not learn that summary judgment on the merits had been entered pursuant to a statute that was the equivalent of its own law. Though viewed dismissively by Texas plaintiffs' counsel at the later October 18, 1996, hearing,[6] the existence of that decision on the merits, if presented vigorously by the prevailing party, might have changed the judge's view on Apple's potential liability—and thus, the relative value of the settlement. As a result of its unawareness of these facts, among others, the Texas judge was deprived of the ability to inquire about the adequacy of representation that had been afforded (in exchange for attorneys' fees of $2,000,000) to the plaintiff class as well as the reasonable-

---

**5.** It is no answer to these inquiries to suggest that Mr. Romstadt's views might have slowed the smooth flow of the initial proceeding. The greater the care the court took because of his involvement, the more necessary and useful it would have been for the court to have had the benefit of his participation.

**6.** Plaintiff's counsel in Texas informed the court at the further proceedings on October 18, 1996, that entry of summary judgment on the merits for Mr. Romstadt, in his view, "does not affect this settlement as it relates to the entire class members." (Doc. 106, Exh. at 18).

ness and fairness of the terms of the settlement.[7]

This complete lack of information about these and other salient aspects of the class and its claims and rights would not have impaired review of the proposed settlement if Mr. Romstadt had been accorded his rights to notice and an opportunity to be heard. Uninformed and unaware, the Texas judge proceeded without basic facts that might have caused him to unfurl a caution flag and slow or halt the proceedings, rather than going forward without meaningful consideration of what he was being asked to sign and do.

No one, including the judge, appears to have been aware of the view of Judge Friendly that judges to whom proposed settlements are presented for initial approval "are bound to scrutinize the fairness of the settlement agreement with even more than the usual care ... to meet the concerns, ..., regarding the possibilities of collusion or of undue pressure by the defendants on would-be class representatives." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982). Moreover, as stated in *First Com. Corp. of Boston Customer Accounts Litigation,* 119 F.R.D. 301, 308 (D.Mass.1987), when preliminarily approving a class settlement "[t]here also has to be a clearer showing of the settlement's fairness, reasonableness and adequacy, and the propriety of negotiations leading to it." *See also Mars Steel v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 681 (7th Cir.1987); *Bowling,* 143 F.R.D. at 151 ("when a settlement to a class action is reached prior to class certification, a court must apply a higher level of scrutiny in evaluating the fairness of the settlement"). When the court performs its role as supervisor/protector [of the class] "without the benefit of a full adversarial briefing," the judge has less information and "cannot as effectively monitor for collusion, individual settle-

ments, buy-offs ... and other abuses." *In re General Motors,* 55 F.3d at 787.

█ This case presents an example of a judge approving a preliminary settlement without sufficient information to monitor "effectively" for collusion, buy-offs, and other potential abuses. I am by no means persuaded that the forthcoming final/fairness hearing can or will remedy the injury done by the proceedings in Texas to Mr. Romstadt and the class he seeks to represent. Once initial settlement approval has been given, a certain momentum develops. If not checked, that momentum can easily accelerate to a rush to judgment that bypasses considerations that, under more appropriate circumstances, would cause a court to pause and look carefully at the course it is being asked to take. Because, as Judge Friendly noted in *Weinberger,* a court's "disposition of a proposed class action settlement should be accorded considerable deference," 698 F.2d at 73, the proposed settlement may well come before the court at the final/fairness hearing with an improper degree of presumptive acceptability.

This concern is highlighted by the observation in the *Manual for Complex Litigation* 240 (3d ed. 1995) that a

court's role in settlement is limited.... The court [at the final hearing] may only approve or disapprove the settlement; it is not empowered to rewrite the agreement between the parties.... If [however] the court makes suggestions at the time of the settlement agreement is submitted for tentative approval, the parties may be willing to make changes prior to the time the agreement is submitted to the class members for their consideration. If substantial changes adversely affecting some members of the class are made at the time of the [final] settlement hearing, a new hearing and additional notice may be necessary.

---

7. I note that, as originally proposed to and preliminarily approved by the Texas court, the settlement included an "offer" of software that was *already in* the computers that the class members had purchased. Though this error was corrected during the further proceedings in the Texas court on October 18, 1996, it should raise some con-

cern about the adequacy of representation afforded to Mr. Romstadt and other members of the class by Texas counsel—who, while receiving $2,000,000—were settling the class claims, in part, for something that the class members already had.

In other words, a judge's options at the time of initial presentation of a settlement are considerably greater than at the final hearing. When initially presented, and if carefully reviewed, the proposed agreement is more readily alterable. The choice facing the court and parties is not limited to the binary alternatives of approval or rejection. At that point, it is easier for the judge to tell the parties to return to the bargaining table. Moreover, the judge—as supervisor or protector of the class—is more likely, if informed at the initial hearing of all pertinent factors because all interested and affected parties are present, to correct problems or postpone approval. The same impulse will be more difficult to accommodate later, when the judge's only choice, if troubled by some aspect of the proposal, is to reject the settlement entirely. I note, as well, Professor Arthur Miller's observation that:

> there really is a serious problem of the judge not having enough information prior to certification to do a completely effective job under Rule 23(e) [relating to notice to a settlement class]. What is clear, is that if the court is going to consider a proposed settlement prior to formal certification, he is advised to demand a full presentation on all of those aspects of certification bearing on an adequacy of representation and class homogeny.

Miller, *An Overview of Federal Class Actions: Past, Present and Future* 60 (Fed. Judicial Ctr.1977).

In making these observations, I do not disregard the presumption that the Texas judge will be attentive to any objections that may be presented to it in the final hearing. Indeed, I decline to issue any form of injunctive relief on the basis, at least in part, of that presumption.[8]

But the context in which those objections will be heard differs materially from the situation that would have existed if notice and opportunity to be heard had been afforded to Mr. Romstadt and the class at the initial appearances before the Texas judges. When and if Mr. Romstadt appears in the final hearing, he will be the odd man out, an unruly and disruptive protestor standing alone against formidable allies, who have had their mutual assistance pact ratified initially by the judicial officer from whom relief is sought.

Though in theory Mr. Romstadt should himself be allied with the Texas plaintiff (and vice-versa), that natural alliance has been severed by Apple. At this point, Mr. Romstadt finds himself in an adversary position, fighting a two or three front war on behalf of himself and the class, on whose behalf he already has secured a judgment on the merits and rejected the settlement now being offered for final approval in the Texas court. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) ("[a]s an objector, [plaintiff] was in a adversary relationship with both plaintiffs and defendants").

The Texas court may, once it hears from Mr. Romstadt in the final/fairness hearing, decline to accept the settlement. But the prospects for that outcome have, in my view, been diminished substantially as a result of the failure to conduct a meaningful hearing prior to entry of the preliminary and amended orders. These circumstances justify the order that I am entering herein.

My perception of the handicap under which Mr. Romstadt will otherwise be laboring in Texas is not lessened by the further proceedings held there on October 18, 1996.

---

**8.** I am also persuaded by Apple's argument in opposition to the plaintiff's motion for preliminary injunction (Doc. 92) that I would be acting in violation of the Anti–Injunction Act, 28 U.S.C. Sec. 2283, if I were to enjoin the Texas proceedings. *See, e.g., Roth v. Bank of the Commonwealth*, 583 F.2d 527, 533 (6th Cir.1978) (the Act's "ban is absolute and [its] language is to be taken literally"). I also reject the plaintiff's argument that I can disregard the Act because the Texas court, in its original order, enjoined Mr. Romstadt (though not by name) as a "Settlement Class Member [who was] barred from ... prose-

cuting any direct or representative action asserting any Claim, unless and until the Settlement Agreement and Release is terminated according to its terms." (Doc. 92, Exh. C at 5–6). That futile effort (corrected in the amended order entered October 18, 1996) to interfere with my jurisdiction had no more effect than an order that I might enter in return that sought to interfere with the Texas court's exercise of its jurisdiction. I decline to use that aspect of the original order as a pretext for issuing an otherwise improper injunction.

Those proceedings were ex parte, and did not, as noted above, cure the deficiencies that marred the submission of the proposed order. Because, in the mind of the participants, my concerns have been addressed and resolved (Doc. 106, Exh. at 32–37), Mr. Romstadt is likely to encounter an even steeper climb in his efforts to prevail on his objections to the settlement.

Other courts have expressed similar concerns with in response to actions similar to those taken by Apple in the Texas proceeding. Thus, in *In re Federal Skywalk Cases,* 97 F.R.D. 370 (W.D.Mo.1983), the court was confronted with a situation in which objectors to its class certification order entered secretly into a settlement agreement with the defendants and obtained, without notice to other class representatives or their counsel, an order preliminarily approving the settlement and certifying a congruent class from a state court. Though the court in *Skywalk* (which later vacated its opinion) addressed itself to the issue of the defendant's contempt of court, it noted that "havoc" would result from allowing the "defendants to make an end-run around its supervisory authority" and be "nearly irremedial." *Id.* at 377.

Similarly, another district court stated in *Breswick & Co. v. Briggs,* 135 F.Supp. 397, 403 (S.D.N.Y.1955), that defense attorneys in a shareholder derivative action had acted improperly when they procured a settlement with counsel other than the lawyers representing shareholders in the proceeding in that court. Declining to enter an order staying the state court proceeding, the federal court ruled that the defendants, as a result of their "inequitable" conduct, would not be allowed to reap the benefit of their state court settlement. Moving directly against the party responsible for wrongful conduct, the court held that it would bar the defendants from asserting res judicata on the basis of the state court judgment. The court pointed out that the "sole thrust of this determination is against the persons of the defendants; they are not in equity entitled to utilize a judgment based on a settlement negotiated

behind the backs of the active plaintiffs here." *Id.* at 403.

The concerns expressed in *Skywalk* and *Breswick* arise in this case as well. The defendant, after having a settlement rejected by one class representative, secretly undertook to get judicial approval for the same settlement with counsel for another class representative.[9] Apple was able to pick and choose among its adversaries, who were, at least in theory, representing the same client. Then, by engaging in ex parte proceedings without notice to another known, active, and partially successful class member, the Texas parties procured approval for a proposed settlement that had been rejected by Mr. Romstadt. In sum, this series of actions amounts to a deprivation without due process of Mr. Romstadt's property interest in a judgment granted by this court under the color of state law.

### The Remedy

In an attempt to remedy the denial of due process, I shall first enter an initial and conditional order of class certification, which shall be subject to revision on further consideration. Next, I express herewith my anticipation that any judgment entered in the Texas proceeding shall not have, as to any class member in this proceeding, res judicata or similar effect unless such class member has taken advantage of the Texas settlement by affirmatively accepting one of the items being offered to the class members in that case. I shall, finally, overrule Apple's motion to stay these proceedings, without prejudice.

This order is subject to being amended or vacated, depending on further developments. If the amended order entered in the Texas court is vacated, and a hearing is scheduled whereby Mr. Romstadt and his counsel are given an opportunity fairly to be heard and present their objections, this order shall be vacated and further proceedings in this case shall be stayed. In that manner, the denial of due process, to the maximum extent possible, will be remedied, as the right to be heard fully and fairly will have been restored without further disadvantage to Mr. Rom-

9. The record does not indicate whether Texas plaintiff's counsel was aware that he was agree-

ing to a proposal that had been rejected by Mr. Romstadt and his lawyers.

stadt and the class he represents. He will not be confronted by the steep hill that otherwise awaits him if that order is not vacated and such opportunity is not afforded to him—the field will have been leveled.

If that order is not vacated (and I am not ordering the Texas court to take such action, just as I am not ordering Apple or the Texas plaintiffs to do anything), I will proceed in this case to: 1) determine whether to finalize my class certification order, and if so, to do so in accordance with Rule 23 and prevailing case law; [10] 2) set this case for a hearing on class damages or other relief; and 3) take such other action as shall appear to be appropriate in the interests of the class or classes that may be certified.

Apple contends that no federal court has ever done what I am doing. It appears to be correct—plaintiff has not cited and I have not found an exact precedent for my action. On the other hand, I have found no case which stands for the proposition that I cannot do what I am doing. Nor, for that matter, have I found a case in which a defendant so successfully turned looming defeat into victory by secretly having a rejected settlement offer accepted and preliminarily approved by a court of law as a class settlement.

■ As stated above, should the Texas court proceed to finalize the settlement that has been conditionally approved thus far, such a settlement will not be entitled to full faith and credit. For support for this decision and approach, I turn first, to the irrefutable proposition that "[t]he opportunity to be heard is an essential requisite of due process of law." *Richards v. Jefferson County,* —— U.S. ——, —— n. 4, 116 S.Ct. 1761, 1765 n. 4, 135 L.Ed.2d 76 (1996). An ex parte pro-

ceeding does not afford due process to persons whose property interests are affected by the outcome of such proceeding. A "State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard." *Id.*

■ Under the Full Faith and Credit Act, 28 U.S.C. § 1738,[11] "a judgment entered in a class action, like any other judgment entered in a state judicial proceeding is presumptively entitled to full faith and credit under the express terms of the Act." *Matsushita Electric Indus. Co., Ltd. v. Epstein,* —— U.S. ——, ——, 116 S.Ct. 873, 878, 134 L.Ed.2d 6 (1996). However, as noted by Justice Ginsburg in that case, a "state-court judgment generally is not entitled to full faith and credit unless it satisfies the requirements of the Fourteenth Amendment's Due Process Clause." (*Id.,* —— U.S. at —— ——, 116 S.Ct. at 884–85 (Ginsburg, J., concurring in part and dissenting in part)). *See also Hanson v. Denckla,* 357 U.S. 235, 255, 78 S.Ct. 1228, 1240–41, 2 L.Ed.2d 1283 (1958) ("there is no obligation to give full faith and credit to a ... judgment invalid ... because offensive to the Due Process Clause of the Fourteenth Amendment"); *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment").

■ I understand full well that *Richards* and *Matsushita* involve final judgments, while this case involves a denial of due process at a preliminary, interlocutory phase.

---

**10.** I wish to make clear that I have not decided that final class certification is or may be appropriate. For now, I am entering an initial conditional order that is as coextensive with the Texas class as, according to my understanding, I can issue. *See, e.g., Toledo Metro Federal Credit Union v. Ted Papenhagen Oldsmobile,* 56 Ohio App.2d 218, 381 N.E.2d 1337 (1978). Such order is, in my view, the only way that I can protect the class represented by Mr. Romstadt from further injury as a result of the due process violations inflicted on him and it by Apple and the proceedings in Texas.

**11.** The Full Faith and Credit statute states in relevant part:

The records and judicial proceedings of any court of any such State, Territory or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Nonetheless, "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." *Kremer,* 456 U.S. at 483, 102 S.Ct. at 1898.

Though perhaps contrary to the conventional wisdom of class action practitioners, I do not believe that a hearing at which preliminary approval is sought in a class action is a meaningless or harmless event. Though in some instances the final/fairness hearing may result in rejection of proposed settlements, that fact is not a basis for concluding that exclusion of Mr. Romstadt in this case can be remedied or redressed at that stage.[12]

To the extent that, as Apple also contends, I am disregarding the conventional view, that the "main event" is the final/fairness hearing, I am persuaded that whatever can happen at that hearing cannot remedy the due process wrongs that occurred in this case. For the reasons I have already expressed, I believe that Mr. Romstadt and the class he seeks to represent have been and will be disadvantaged and prejudiced unless I proceed with this order and further proceedings.

If, as already stated, the Texas amended order is vacated and a hearing is scheduled, with due notice and an opportunity to be heard being extended to Mr. Romstadt and his counsel, I will stay all further proceedings in this case.

If I am disregarding conventional wisdom about the proceedings by which preliminary approval is obtained in class actions, so be it. Contrary to such "wisdom," that is no time for proceeding ex parte and leaving judges uninformed. It is at that point that the judge has, and is most likely to exercise, maximum discretion and authority. Later he or she will be confronted, after the expenditure of considerable money and effort, with a binary "up or down" choice. Even the fairest judge will feel some hesitancy in the face of that situation. In practical effect, the settlement, even though contested, may have an aspect of presumptive acceptability that will be more difficult to overcome than at the outset of the proceedings.

How I proceed at this point is up to the Apple, Texas plaintiff's counsel, and the Texas court: but I issue no commands to any of them, and they are free to act as they see fit. I note, however, that if notice is issued to the class certified in Texas, I anticipate, if I certify a class or classes, to require Apple to undergo the expense of issuing notice to the class members in this case.

I will close with the observation that, if the proposed settlement is as fair as Apple and Texas counsel have represented to the Texas court, they should have no fear or reluctance to subject it forthwith to the attentive scrutiny that only a due process hearing can afford. There may well be no merit to the objections that Mr. Romstadt and his counsel seek to make—that is for the Texas court to decide. The parties in Texas should be willing now to expose their agreement to the sunlight of challenge; if they do not want to do so, one must wonder what it is they seek to hide.

For the foregoing reasons, it is hereby

**ORDERED THAT:**

1. Plaintiff's motion for a preliminary injunction is denied;

2. Plaintiff's motion for class certification is initially and conditionally granted, subject to revision; the class being all persons who prior to August 21, 1996, purchased or leased for personal, and not commercial, use, a new Apple Performa 475 or 476 computer in the United States of America, for their own use and not for resale or lease to others, pursuant to Fed.R.Civ.P. 23; and

12. I note that to allow participation of other class action plaintiffs at the outset would likely have some benefits beyond providing due process. Well-taken challenges to proposed settlements would become known, as would the judge's acceptance of such challenges, before the expense and delay of class notice had been undertaken. The shambles left by failed class action settlements would be created in fewer cases. The primacy of the judge's role over all phases and aspects of a class action proceeding would be assured. The risk of collusion would be reduced, as would the risk, which has been actualized in this case, that potential allies would become adversaries, thereby benefiting the defendant whose conduct each is challenging. Settlement orders, even if preceded by challenge at the final/fairness hearing, would probably enjoy a greater measure of protection against reversal on appeal if due process were afforded at each step—and not just the last step—along the way.

3. Defendant's motion for stay is denied, without prejudice to renew.

**So ordered.**